750 A.2d 843

**Carmen BORGIA, Appellant,**

v.

**PRUDENTIAL INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1999.

Decided May 19, 2000.

Michael T. van der Veen, Monroeville, Robert J. Baccari, for Carmen Borgia.

Charles W. Carven, for Prudential Insurance Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

This appeal requires us to examine the nature and scope of a contractual arbitration provision in a policy of automobile insurance.

On August 14, 1992, an automobile owned and operated by Appellant, Carmen Borgia, Jr. ("Borgia"), was involved in an

accident with another motor vehicle. Borgia's damages from the accident exceeded $15,000, the limit of the liability coverage available under the policy issued by State Farm Insurance Company to the driver of the other vehicle. Borgia had insured his automobile through a policy issued by Nationwide Insurance Company, but had elected to waive both uninsured and underinsured motorist coverage ("UM" and "UIM" coverage, respectively).

On the date of the accident, Borgia was 27 years old and resided with his parents. His father owned two automobiles that were covered under a separate policy of insurance issued by Appellee, the Prudential Insurance Company ("Prudential"). Lacking UIM coverage under his own policy, Borgia filed a claim for such coverage under his parents' policy. Prudential denied the claim on the grounds that, *inter alia*, Borgia was not a named insured, and his car was not a covered vehicle. Borgia was unwilling to accept Prudential's determination.

On August 28, 1995, Prudential filed a declaratory judgment action to resolve the dispute over whether Borgia was a "covered person" under the policy issued to his parents. That same day, Borgia filed a petition to appoint arbitrators and to compel arbitration. By order of November 7, 1995, the trial court (Bonavitacola, P.J.) granted Borgia's petition and scheduled an arbitration hearing. Prudential, in its declaratory judgment action, filed a motion to stay arbitration. The trial court (O'Keefe, J.) denied the motion, and an arbitration hearing took place. The trial court subsequently denied Prudential's motion for reconsideration of the order compelling arbitration (Bonavitacola, P.J.) and dismissed Prudential's declaratory judgment action "without prejudice to be[ing] reopened when uninsured [sic] motorist provisions have been exhausted" (Moss, J.). On May 16, 1996, the arbitrators issued their report and award. By a vote of 2 to 1, they found that Borgia was entitled to recover UIM benefits under the Prudential policy in the amount of $87,500.

Prudential filed a petition to vacate the arbitration award and to reinstate the declaratory judgment action, averring

that the terms of its policy explicitly limited the remedy of arbitration to disagreements between the company and a "covered person," that Borgia could not be deemed a covered person under the policy, and that Borgia had failed to attach a copy of the policy to his petition to compel arbitration and had failed to allege in the petition that he was a covered person. Borgia filed a petition to confirm the arbitration award. In both the declaratory judgment action and the arbitration action, the trial court (O'Keefe, J.) entered orders denying relief to Prudential and confirming the arbitrators' award. Final judgments in Borgia's favor were entered in both actions. Prudential appealed from both judgments, and the Superior Court consolidated the appeals *sua sponte.*

Prudential argued to the Superior Court that the trial court had erred in ordering the parties to proceed to arbitration without first resolving the threshold question of whether Borgia was entitled to demand arbitration. The Superior Court agreed, reasoning that, regardless of whether the alleged agreement called for statutory or common law arbitration, the trial court's first task, upon being presented with a petition to compel arbitration, was to determine whether the parties had in fact agreed to arbitrate. The relevant inquiry, according to the Superior Court, was not simply whether the insurance policy contained an arbitration clause, but whether the party who had petitioned to compel arbitration was one who, under the terms of the contract, was entitled to enforce such clause. If the petitioner did not meet the requirements of the contract in that regard, the Superior Court explained, there was no agreement to arbitrate between the insurer and the petitioner, and, accordingly, no basis for sending the parties' dispute to arbitration. The Superior Court emphasized that "the question of whether a particular party may enforce the arbitration agreement is for the trial court."

The Prudential policy issued to Borgia's parents stated, with regard to UIM benefits, that "[i]f we [Prudential] and a covered person disagree on policy coverages or amounts payable, either party may make a written demand for arbitration." After examining other relevant provisions of the policy,

the Superior Court concluded that Borgia was not a covered person who was entitled to demand arbitration.[1] Therefore, the court concluded, there was no agreement to arbitrate between Borgia and Prudential. On that basis, the court reversed the judgments in favor of Borgia and remanded for entry of judgments in favor of Prudential. *Prudential Ins. v. Borgia*, 724 A.2d 968 (Pa.Super.1998) (table).

Borgia petitioned for allowance of appeal, arguing that the Superior Court, by reversing the arbitrators' decision for an error of law, had exceeded the scope of review applicable to common law arbitration. We granted allowance of appeal limited to the issues of whether this matter is controlled by common law arbitration principles and, if so, whether the Superior Court exceeded the applicable scope of review when it determined that the question of whether Borgia was a "covered person" should not have been submitted to arbitration.[2]

**1.** The policy issued to Borgia's parents does not define the term "covered person." Part 5 of the policy explains that, if the policyholder has purchased UIM coverage, Prudential "will pay up to our limit of liability for bodily injury that is covered under this part when an insured (whether or not occupying a car) is struck by an underinsured motor vehicle." As for who is an insured, the policy provides, *inter alia*, that the policyholder and "resident relatives" are insured while using the policyholder's car, a "substitute car," or a "non-owned car." A "substitute car" is one which the policyholder has borrowed temporarily to replace a covered car that is being repaired or replaced; it cannot be a car that is owned by the policyholder or a household resident. A "non-owned" car includes rental cars, and the policy specifies that such a car must be used with its owner's permission and in the manner intended by the owner. Prudential concedes, and the Superior Court acknowledged, that Borgia was a resident relative in his parents' household. Nevertheless, the court agreed with Prudential's assertion that Borgia was not entitled to UIM benefits because his accident occurred while he was driving a vehicle that could not be deemed either a substitute car or a non-owned car under the policy.

**2.** On appeal, Prudential argues that Borgia conceded, in both the trial court and the Superior Court, that Prudential had the right to appellate review of the order compelling arbitration. We have determined that this is not the case. In addition, Borgia argues that counsel for Prudential, at arbitration, conceded that it was for the arbitrators to decide the coverage dispute. There would appear to be some merit to this contention, as Prudential's attorney stated to the arbitrators: "If what you're saying . . . is, is it for the panel of arbitrators to resolve the coverage dispute between plaintiff and defendant, I am conceding that

■ As for the first issue, the arbitration clause of the UIM section of the Prudential policy does not provide for the application of the Pennsylvania Uniform Arbitration Act, contained in Subchapter A of Chapter 73 of the Judicial Code, 42 Pa.C.S. §§ 7301–7320 (the "Act"),[3] and commonly known as statutory arbitration, nor is any subsequent agreement to apply the Act asserted. Therefore, it is presumed that arbitration under the policy is governed by Subchapter B of Chapter 73 of the Judicial Code, 42 Pa.C.S. §§ 7341–7342,[4] or common law arbitration. 42 Pa.C.S. § 7302(a); *Brennan v. General Accident Fire and Life Assur. Corp., Ltd.*, 524 Pa. 542, 549, 574 A.2d 580, 583 (1990); *Runewicz v. Keystone Ins. Co.*, 476 Pa. 456, 460, 383 A.2d 189, 191 (1978). Indeed, as the trial court observed, neither party disputed that the present arbitration is of the common law variety.

■ The general principles governing common law arbitration are well settled. Where one party makes application to compel arbitration, and the opposing party denies the existence of an agreement to arbitrate, the trial court "shall proceed summarily to determine the issue so raised . . . ." 42 Pa.C.S. § 7304(a); *see also* 42 Pa.C.S. § 7342(a) (providing that specified sections of the Act, including Section 7304, shall be applicable to common law arbitration). In doing so, the trial court may not refuse an application to compel arbitration "on the ground that the controversy lacks merit or bona fides or on the ground that no fault or basis for the controversy sought to be arbitrated has been shown." 42 Pa.C.S. § 7304(e). Once it has been determined that a substantive dispute is arbitrable, the arbitrators normally have the author-

today." However, as counsel's statement, read in context, and particularly in light of Prudential's then-ongoing declaratory judgment action, is ambiguous, we decline to resolve this appeal on the basis of the asserted concession.

3. Act of April 25, 1927, P.L. 381, No. 248, *as amended*, 5 P.S. §§ 161–179. The Act of 1927 was repealed by the JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693, No. 142, 501(c), effective in 60 days.

4. Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended*, Oct. 5, 1980, P.L. 693, No. 142, § 501(a); Act of Dec. 20, 1982, P.L. 1409, no. 326, art. II, § 201.

ity to decide all matters necessary to dispose of the claim. *Brennan,* 524 Pa. at 549, 574 A.2d at 583. The resulting arbitration award is binding, 42 Pa.C.S. § 7341; *Hade v. Nationwide Ins. Co.,* 519 Pa. 227, 230, 546 A.2d 615, 616 (1988), and judicial review is very narrow. *Id.; see also Brennan,* 524 Pa. at 550, 574 A.2d at 583 (explaining that, "unless restricted by the submission, the arbitrators are the final judges of law and fact and their award will not be disturbed for mistake of either"); *Runewicz,* 476 Pa. at 461, 463, 383 A.2d at 192, 193 (observing that a common law arbitration award, even if "blatantly at odds with the contract involved," will not be set aside absent "a showing of denial of a hearing or fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable, or unconscionable award").[5]

■ Borgia argues that if the Superior Court had properly applied these settled principles to the facts of the present case, it would not have reversed the judgments entered in his favor. Borgia reasons that, since the arbitration clause at issue provided for arbitration of disputes concerning "policy coverages," his substantive dispute with Prudential was necessarily arbitrable, and the arbitrators were therefore authorized to decide all matters necessary to the resolution of that dispute. Whether Borgia was a covered person under his parents' policy was, he contends, one of the matters—perhaps *the* essential matter—that had to be resolved in order to dispose of his claim. Borgia asserts that the arbitrators resolved the issue in his favor, and in doing so they did not deny Prudential a hearing, nor was the arbitration process

5. In contrast, a party may seek vacation of a statutory arbitration award on any of the various grounds set forth at Section 7314(a)(1) of the Judicial Code, including the lack of an agreement to arbitrate. 42 Pa.C.S. § 7314(a)(1)(v); *see, e.g., Patton v. Hanover Ins. Co.,* 417 Pa.Super. 351, 612 A.2d 517 (1992) (quashing an appeal from an order granting claimant's petition to compel arbitration, and noting that the trial court could address the existence of an arbitration agreement if the insurer petitioned to vacate the resulting award pursuant to Section 7314(a)(1)(v)). Section 7314 is not among the provisions of the Act that have been made applicable to common law arbitration via Section 7342(a).

tainted by fraud, misconduct, corruption, or any similar irregularity that would warrant setting aside the award. In Borgia's view, Prudential's fundamental argument to the Superior Court was that the arbitrators erred as a matter of law when they found that Borgia was a covered person under the policy. A common law arbitration award is not reviewable for such errors, however, and therefore, Borgia contends, the Superior Court exceeded its scope of review when it vacated the judgments in Borgia's favor.

Borgia's argument finds support in the substantial body of case law concerning contractual arbitration provisions. In the lead case of *National Grange Mut. Ins. Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968), the claimant, having sustained injury in a two-car collision, sought UM benefits under an insurance policy issued to the owner of the vehicle in which the claimant had been a passenger.[6] The insurer denied the claim, maintaining that the driver of the other vehicle was not uninsured. When the claimant sought to proceed to common law arbitration pursuant to the policy,[7] the insurer obtained a preliminary

6. Until 1984, UM coverage was governed by the Uninsured Motorist Act, Act of August 14, 1963, P.L. 909, § 1 (codified as amended at 40 P.S. § 2000) (the "UM Act"), which provided that automobile liability policies must include UM coverage. 40 P.S. § 2000(a); *Davis v. Government Employees Ins. Co.*, 500 Pa. 84, 86, 454 A.2d 973, 973 (1982). In 1984, the legislature enacted the Motor Vehicle Financial Responsibility Law, Act of February 12, 1984 (No. 11), § 8(c) (codified as amended at 75 Pa.C.S. §§ 1701–1799.7) (the "MVFRL"), which required insurers to provide UIM as well as UM protection. 75 Pa.C.S. § 1731; *Hackenberg v. Southeastern Pa. Transp. Auth.*, 526 Pa. 358, 361, 586 A.2d 879, 880 (1991). Under the 1990 amendments to the MVFRL, insurers were required to offer UM and UIM coverage, but the purchase of such coverage was optional. 75 Pa.C.S. § 1731(a); *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 348 n. 2, 648 A.2d 755, 761 n. 2 (1994). The UM Act has not been repealed, although it has been supplanted in some respects by the MVFRL. *Hackenberg*, 526 Pa. at 363 n. 4, 586 A.2d at 881 n. 4. *See generally* JAMES R. RONCA ET AL., PENNSYLVANIA MOTOR VEHICLE INSURANCE: AN ANALYSIS OF THE FINANCIAL RESPONSIBILITY LAW § 5.1, AT 91. Arbitration is not mandated by the UM Act, *see Hiller v. Allstate Ins. Co.*, 300 Pa.Super. 149, 151 n. 1, 446 A.2d 273, 274 n. 1 (1982), or the MVFRL, *see Johnson v. Pennsylvania Nat'l Ins. Cos.*, 527 Pa. 504, 507, 594 A.2d 296, 298 (1991).

7. The policy provided for arbitration pursuant to the rules of the American Arbitration Association and, in addition, expressed the parties' agreement to be bound by the arbitration award. Such phrases

injunction restraining the parties from doing so. According to the insurer, the other driver's status as insured or uninsured was not an arbitrable issue within the terms of the policy.

Claimant appealed, requiring this Court to decide, for the first time, the scope of the arbitration contemplated by an arbitration clause in the UM provisions of an automobile insurance policy. "This question," the Court reasoned, "must be decided in the light of the language of the ... policy affording the coverage." *Id.* at 181, 236 A.2d at 759. The language of the arbitration clause in the *Kuhn* policy, with regard to both who could demand arbitration and what matters could be arbitrated, was very broad. The clause provided that, where the insurer and "any person making [a UM] claim" disagreed as to the claimant's legal entitlement to damages or the amount owed, either party could demand arbitration of "the matter or matters upon which such person and the company do not agree...." *Id.* at 182, 236 A.2d at 759. Reasoning that "court proceedings should not be read into [an] agreement to arbitrate[,]" *id.* at 185, 236 A.2d at 760, and that any ambiguity should be resolved against the insurer as drafter, *id.*, this Court interpreted the language quoted above as expressing the parties' agreement to submit to arbitration *any* disputed "matter or matters" arising under the UM provisions of the policy. "The arbitration clause, in our view, indicates that the parties contemplated one method, and one method only, for the resolution of disputes under this coverage. That method was arbitration and all such disputes should be so decided." *Id.* at 185, 236 A.2d at 761. Such a conclusion was not unfair to the insurer, the Court explained, because "the policy language is the [insurer's] and it may, if it so desires, alter that language to limit arbitration to only those issues it desires to be arbitrable." [8] *Id.*

denote common law arbitration. *Runewicz,* 476 Pa. at 461, 383 A.2d at 191.

8. As the Superior Court subsequently observed, although arbitration was not required by the UM Act, *see* footnote 6, UM clauses ordinarily provided for arbitration, and in fact the national standard form included a broad arbitration clause. *Hiller,* 300 Pa.Super. at 151 n. 1, 446 A.2d at 274 n. 1.

In two subsequent decisions, this Court applied the principles of *Kuhn* to determine whether the claimant was a person who, under the terms of the policy, was entitled to recover UM benefits. In *Allstate Ins. Co. v. Taylor*, 434 Pa. 21, 252 A.2d 618 (1969), the claimant, a graduate student who did not live in his father's home, argued that he was nevertheless "a resident of [his father's] household" and, as such, was entitled to recover UM benefits under his father's Allstate policy. In *Preferred Risk Mut. Ins. Co. v. Martin*, 436 Pa. 374, 260 A.2d 804 (1970), the issue was whether the claimant was entitled to obtain UM benefits under a policy issued to her foster father, where such policy afforded coverage to resident relatives of the named insured. The claimants in both cases sought to arbitrate their disagreements with the insurer pursuant to UM policy provisions that allowed "any person making claim hereunder" to demand that "the matter or matters" in dispute be settled by arbitration. In each case, this Court held that the arbitration clause encompassed the matter in dispute.[9] *See also Allstate Ins. Co. v. McMonagle*, 449 Pa. 362, 296 A.2d 738 (1972) (concluding that the alleged expiration of the claimant's policy was an issue to be arbitrated); *Merchants Mut. Ins. Co. v. American Arbitration Ass'n (Appeal of DiUmberto)*, 433 Pa. 250, 248 A.2d 842 (1969) (concluding same, with regard to the applicability of the statute of limitations); *Harleysville Mut. Ins. Co. v. Medycki*, 431 Pa. 67, 244 A.2d 655 (1968) (concluding same, with regard to the claimant's alleged non-compliance with policy requirements concerning notice and proof of claim).

Although all of these cases involved coverage under the Uninsured Motorist Act, the fundamental principle set forth in those decisions—that where the parties have chosen arbitration as the forum for resolution of their disputes, they are

9. *Taylor* was decided by a full Court, with three justices dissenting and one justice concurring in the result. The dissenters agreed that "under our [prior] decisions . . ., either party *could* have required [the] issue to be decided by an arbitrator." *Id.* at 26, 252 A.2d at 620 (Roberts, J., dissenting) (emphasis in original). Neither party had done so, however, and the dissenters saw no basis on which the Court could "demand enforcement of a provision which neither party wishes to utilize." *Id.* at 27, 252 A.2d at 621.

bound by that choice—is not peculiar to the nature of arbitration involving UM benefits. In *Borough of Ambridge Water Auth. v. J.Z. Columbia,* 458 Pa. 546, 328 A.2d 498 (1974), this Court was presented with a dispute arising under an employment contract that contained a common law arbitration agreement. The Court rejected the Authority's contention that the rationale of *Kuhn* and progeny should not be extended to an employment contract, explaining that "[w]e have found no precedent nor can we perceive any reason why such a distinction should be drawn." *Id.* at 550, 328 A.2d at 501; *see also Jewelcor Inc. v. Pre–Fab Panelwall, Inc.,* 397 Pa.Super. 78, 83, 579 A.2d 940, 942 (1990) (applying *Taylor* to a dispute arising from a construction contract); *Rocca v. Pennsylvania Gen. Ins. Co.,* 358 Pa.Super. 67, 516 A.2d 772 (1986) (applying *Medycki* to a claim for UIM benefits), *appeal denied,* 517 Pa. 594, 535 A.2d 83 (1987); *Campbell–Ellsworth, Inc. v. Holy Trinity Serbian Orthodox Church–School Congr. of Pittsburgh,* 233 Pa.Super. 126, 132–33, 336 A.2d 346, 349 (1975) (applying *Martin* to a dispute arising from a construction contract).

In *Brennan,* this Court addressed the scope of an arbitration clause in the UIM provisions of an automobile insurance policy. The issue in *Brennan* was whether the arbitrators, in concluding that the claimant was entitled to UIM benefits, had exceeded the scope of the common law arbitration authorized in the policy by considering a "setoff" theory that the claimant had not raised. The arbitration clause in *Brennan* provided that "[i]f we and the covered person disagree whether that person is legally entitled to recover damages from the owners or operator of an underinsured motor vehicle, or do not agree as to the amount of damages, either party may make a written demand for arbitration." *Id.* at 547–48, 574 A.2d at 582.

This Court interpreted the quoted language very broadly. Given such language, the Court explained, "[t]here is no limit to the jurisdiction of the arbitrators over what issues may be submitted[,] and in fact the policy declares that all disputes between the insurance company and the insured will be arbitrated." *Id.* at 549, 574 A.2d at 583. Because the parties'

dispute, in its broadest sense, involved the amount of damages that the claimant could receive, and because, as had been noted in *Kuhn*, any ambiguity was to be interpreted against the insurer, this Court concluded that the dispute was within the scope of the arbitration clause. *Id.*

Although the focus of this Court's analysis in *Brennan* was on "what issues may be submitted" to arbitration, in *Baverso v. State Farm Ins. Co.*, 407 Pa.Super. 164, 595 A.2d 176 (1991), the Superior Court relied on *Brennan* to decide an issue concerning who may submit issues to arbitration. In *Baverso*, the claimant demanded arbitration pursuant to a clause in a State Farm policy providing that, in the case of a disagreement as to whether "the insured" was "legally entitled to collect damages from the owner or driver of an uninsured motor vehicle," or as to the amount of such damages, either "the insured" or State Farm could demand that the issue be decided by statutory arbitration. The Superior Court concluded that, "[w]hile the issue of whether appellant, Baverso, is an insured under the contract is seemingly a prerequisite to arbitration under State Farm's policy, all issues under this type of arbitration clause [that is, one utilizing 'the type of wording found in *Brennan*'] must be determined by a panel of arbitrators."

■ In the case before us, the issue to be decided is whether, under the terms of the arbitration clause in Part 5 of the Prudential policy, Borgia's claim to the status of a "covered person" who may demand arbitration is, in itself, arbitrable. As noted earlier, the arbitration clause provides that "if [Prudential] and *a covered person* disagree on *policy coverages* or amounts payable, either party may make a written demand for arbitration" (emphasis added). Prudential contends that, pursuant to this language, a determination that the claimant is a covered person must *precede* arbitration of coverage disputes. Such a requirement is not apparent from the language of the arbitration clause, however. The quoted phrase does not draw a clear distinction between parties who are entitled to invoke arbitration and matters which may be arbitrated, and a common-sense interpretation suggests that

the phrase "disagree[ments] on policy coverages," denoting a category of arbitrable matters, would encompass a dispute as to whether a claimant was "a covered person" under the policy.[10]  Significantly, although the status of "covered person" is purportedly a threshold requirement for arbitration, that crucial term is not defined anywhere in the policy.  To complicate matters further, Prudential attempts to distinguish *Baverso* by arguing that the party who sought arbitration in that case had "a legitimate and colorable claim" to the status of "insured."  In so doing, Prudential implies that a mere "legitimate and colorable claim" to the status of "covered person" would be sufficient to authorize a claimant to demand arbitration under Part V of the Prudential policy.

In sum, the Prudential policy, insofar as it attempts to limit the right to demand arbitration to a certain class of claimants, is ambiguous.  Pursuant to *Kuhn* and *Brennan,* such ambigui-

10.  In this respect, the present case is distinguishable from *Baverso.* The policy in *Baverso* provided for the arbitration of disagreements concerning the insured's legal entitlement to collect damages *from the owner or operator of an underinsured motor vehicle,* or the amount of such damages.  Arguably, such language limits the scope of arbitration to issues arising from the claimant's underlying tort action against the owner or operator of the other vehicle, and does not encompass a disagreement as to whether the claimant was in fact "an insured."  The policy in the present case, in contrast, utilizes the broader, less specific term "policy coverages" to define the scope of arbitration, and that phrase is fairly read to encompass the claimant's asserted status as a "covered person."  Whether the Superior Court in *Baverso* improperly extended this Court's holding in *Brennan* is a question that is not before us in this case.  Notably, the approach to UIM arbitration provisions taken by this Court in *Brennan* is, in itself, broader than that of most other jurisdictions.  *See National Union Fire Ins. Co. v. Reynolds,* 77 Hawai'i 490, 493, 889 P.2d 67, 70 (App.1995) (citing A.S. Klein, Annotation, *What Issues Are Arbitrable Under Arbitration Provision of Uninsured Motorist Insurance,* 29 A.L.R.3d (1970), which addresses UIM as well as UM coverage).  In addition, federal courts applying Pennsylvania case law have noted that the Superior Court has interpreted *Brennan* broadly.  *See, e.g., McAlister v. Sentry Ins. Co.,* 958 F.2d 550, 553–54 (3 rd Cir.1992) (concluding that, where a policy provided that either the insurer or "the insured" could demand arbitration of disagreements as to whether the "insured" was legally entitled to recover damages from the owner or driver of an underinsured motor vehicle, it was for the arbitrators to determine whether the claimant was "an insured"); *Continental Cas. Co. v. Gezon,* 1994 WL 236458 (E.D.Pa.1994) (same, with regard to UM coverage).

ty is not to be resolved by inserting into the arbitration agreement a requirement for court proceedings to resolve the purported threshold issue, but by applying the settled principle that ambiguous language is to be interpreted against the drafter—in this case, Prudential. Thus, the arbitration clause, insofar as it specifies the scope of arbitration, must be construed broadly, with the result that whether Borgia was a "covered person" within the meaning of the policy was an issue to be decided by the arbitrators. Interpreting the agreement in this manner comports with the principle that public policy favors arbitration. *Johnson v. Pennsylvania Nat'l Ins. Cos.*, 527 Pa. 504, 510, 594 A.2d 296, 300 (1991); *see also Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 662–63, 331 A.2d 184, 185 (1975) (observing that settlement of disputes by arbitration is encouraged by statute and courts); *Borough of Ambridge*, 458 Pa. at 549, 328 A.2d at 500 (same).

Such an outcome inflicts no injustice on Prudential. This is not a case in which the party who challenges the arbitration award (Prudential) contends that *it* was not a party to the arbitration agreement. *See Martin*, 436 Pa. at 377, 260 A.2d at 805 (rejecting the insurer's argument that *Goldstein v. Int'l L.G.W.U.*, 328 Pa. 385, 196 A. 43 (1938), holding that one who denied being a party to an arbitration agreement was entitled to a judicial determination of the question, was applicable to the case at bar, it being undisputed that the insurer was a party to such an agreement); *cf. Gaslin, Inc. v. L.G.C. Exports, Inc. (Appeal of Figueroa)*, 334 Pa.Super. 132, 144 n. 8, 482 A.2d 1117, 1124 n. 8 (1984) (stating that "[i]f Figueroa was not a party to the franchise agreement that contained the arbitration provision, then he did not consent to arbitrate this dispute and the award against him was improper"), *superseded by statute on other grounds as stated in Beriker v. Permagrain Products, Inc.*, 347 Pa.Super. 102, 500 A.2d 178 (1985). To the contrary, Prudential was not merely a party to, but was the drafter of, the arbitration agreement. Having chosen common law arbitration as the forum for resolution of coverage disputes, Prudential is bound by the narrow scope of

review applicable to such arbitration, just as Borgia would be if the arbitrators had ruled against him. The language of the arbitration agreement was "of the [insurer's] own choosing, and ... if it wishe[d] different or narrower terms, it should [have] provide[d] them." *Hiller*, 300 Pa.Super. at 151 n. 1, 446 A.2d at 274 n. 1 (citing *Kuhn* ).

Accordingly, we conclude that where, as here, an insurer has drafted the UIM provisions of a policy to provide, without exception, for common law arbitration of "coverage disputes" between the insurer and a "covered person," it is for the arbitrators to decide whether a particular claimant is a "covered person," and their decision in the matter will not be reversed for an error of law. We therefore reverse the order of the Superior Court which vacated the judgments entered on the arbitration award.

Justice ZAPPALA files a concurring opinion.

Justice NIGRO files a dissenting opinion in which Justice NEWMAN joins.

ZAPPALA, Justice, concurring.

The automobile insurance policy issued by Prudential Property and Casualty Insurance to the father of Carmen Borgia, Jr. provided coverage for underinsured motorist benefits to the named insured, the spouse of the named insured living in the household of the named insured, and resident relatives in specific circumstances described by the terms of the policy. "Resident relative" was defined to include "someone who lives in your household and is related to you by blood, marriage, adoption or is a ward or foster child." [1] As the son of the named insured, who lived in his father's household at the time of the accident, Carmen Borgia, Jr. qualified as a resident relative under the policy.

1. Under the definitional section of the policy, "you or your" was defined to mean "the person shown as the named insured on the Declarations of this policy, and your spouse, if he or she lives in your household."

Borgia made a claim for underinsured motorist benefits which was denied by Prudential on the basis that Borgia was not an insured under the policy. Prudential subsequently filed its declaratory action seeking a determination that it had no obligation to afford underinsured motorist coverage to Borgia under the terms and conditions of the policy issued to Borgia's father. In turn, Borgia filed a petition for appointment of underinsured motorist arbitrators, requesting that an arbitration hearing be scheduled within sixty days.

In seeking to compel arbitration, Borgia relied upon the policy provision of his father's policy relating to arbitration which states,

If **we** and a covered person disagree on policy coverages or amounts payable, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree on the third arbitrator within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and share the expenses of the third arbitrator equally. Unless both parties agree otherwise, arbitration will take place in the county and state in which the covered person lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two arbitrators will be binding if the award does not exceed the limits required under the Financial Responsibility Law of Pennsylvania.

If an arbitration award exceeds those limits, either party has a right to trial on all issues in a court of competent jurisdiction. This right must be exercised within 30 days of the award. Each party will pay their own expenses.

R.36a (emphasis supplied). "Covered person" is not defined in the policy.

The absence of a definition in the policy for covered person led to the conflicting interpretations offered in this case by Borgia and Prudential. Borgia contends he is a covered person because he is a resident relative to whom underinsured

motorist coverage is extended under the terms of the policy, while Prudential contends that underinsured motorist coverage is inapplicable because Borgia was operating his own vehicle when the accident occurred and, therefore, was not a covered person.

The issue of whether Borgia was entitled to underinsured motorist coverage under the Prudential policy is separate from the issue of whether he was entitled to compel arbitration when the dispute over coverage arose. I find that Borgia was a covered person who was entitled to enforce the arbitration clause to resolve the dispute over coverage. Absent the use of that terminology, I would have concluded otherwise. Prudential's oversight in failing to define covered person gave rise to this result, as Borgia was clearly a resident relative covered by the insurance policy. Because the arbitration clause was enforceable, Prudential was subject to and bound by the arbitrator's interpretation of the coverage issues.

Were we able to review the arbitrators' decision for a mistake of law, however, I would join Justice Nigro's analysis of the coverage issue in his dissenting opinion because I would agree that Borgia was not entitled to receive underinsured motorist benefits for the reasons articulated therein.

NIGRO, Justice, dissenting.

I respectfully dissent, as I believe the Superior Court properly identified the relevant inquiry as not simply whether the insurance policy encompasses an agreement to arbitrate but whether the appellant is a "covered person" under the contract and thereby entitled to enforce the arbitration provision. Thus, it is of no moment whether the alleged agreement underlying the petition to compel arbitration signals common law or statutory arbitration until the court determines whether these parties have agreed to arbitrate. In other words, if the appellant does not meet the threshold requirement of the contract to be deemed a "covered person," then there was no agreement to arbitrate between the insurer and the appellant and, therefore, no basis for sending the parties' underlying coverage dispute to arbitration in the first place. Under the

policy at issue, I agree with the Superior Court and find that appellant is not a "covered person."

The Prudential policy at issue has an arbitration clause, which states in relevant part:

**ARBITRATION**

If **we** [Prudential] and a covered person disagree on policy coverages or amounts payable, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree on the third arbitrator within 30 days, either may request that selection be made by a judge or a court having jurisdiction. . . .

Prudential Insurance Policy No. 28 2A872944 ("Policy"), Parts 4–7 at 9 (bolding in original; underline added).

Thus, the contractual right to arbitrate is limited to *Prudential* and a *covered person* and on the issues of *coverages* or *amounts payable*. Therefore, in order for appellant to request arbitration of a coverage dispute, he must be a covered person under the terms of the policy.

While the policy does not specifically define "covered person," an examination of its provisions is instructive as to what the contracting parties agreed. First, the Declarations page lists only Carmen Borgia's parents as the named insureds. Furthermore, the "Definitions" section reveals the following:

**HOUSEHOLD RESIDENT**

A **household resident** is someone who lives in your household. A **household resident** includes a **resident relative**.

\* \* \* \*

**RESIDENT RELATIVE**

A **resident relative** is someone who lives in **your** household and is related to **you** by blood, marriage, adoption or is a ward or foster child.

**YOU OR YOUR**

> **You** or **your** means the person shown as the named insured on the Declarations of this policy and **your** spouse, if he or she lives in **your** household.
>
> **WE, U.S. OR OUR**
>
> **We, us,** or **our** means Prudential Property and Casualty Insurance Company or one of its subsidiaries as shown on **your** Declarations.

Policy, Parts 1–3 at 2 (bolding in original).

The policy further explains that it provides coverage for cars described on the Declarations page (those for which a premium has been charged) [1] and for "substitute cars," defined as follows:

> **SUBSTITUTE CARS**
>
> If a **car** covered under this part breaks down, is being serviced or repaired, or is stolen or destroyed, **we** will cover a **car you** borrow temporarily (with the owner's permission) while **your car** is being repaired or replaced. This **car** cannot be owned by **you** or a **household resident**. The substitute **car** has the same coverage as the **car** that is out of service.

Policy Part 1 at 7; Part 4 (Uninsured Motorists) at 2; Part 5 (Underinsured Motorists) at 7 (bolding in original; underline added).

In addition, the policy covers certain "non-owned cars" such as a rental car or a borrowed car for a limited number of days, a non-owned car being described as follows:

> **NON–OWNED CAR**
>
> A **non-owned car** is a **car** which is not owned by, registered in the name of or furnished or available for the regular or frequent use of **you** or a **household resident**.

---

1. This section also provides coverage for "additional" and "replacement" cars for a limited period of time, until such are added to the Declarations page. None of these other categories has application to Carmen Borgia's car.

\* \* \* \*

Policy, Parts 1–3 at 2 (bolding in original; underline added).

In other words, a car owned by a resident relative that is not listed in the Declarations page is not an insured car under the policy.

Under the UM/UIM sections [2] the policy further spells out "What Cars are Covered" as the cars on the Declarations page, "replacement" and "additional" cars to be added to the policy, and "substitute" cars and other "non-owned" cars as described *supra.* Assuming claimant is injured in a covered car, these sections then go on to state who is considered an insured for purposes of UM/UIM coverage:

## WHO IS INSURED

### IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)

**You** and a **resident relative** are insured while using **your car** or a substitute **car** covered under this part.

Other people are insured while using **your car** or a substitute **car** covered under this part if **you** give them permission to use it. They must use the **car** in the way **you** intended.

### IN A NON-OWNED CAR

**You** and a **resident relative** are insured while using a **non-owned car.** The owner must give permission to use it. It must be used in the way intended by the owner.

### HIT BY A MOTOR VEHICLE

**You** and a **resident relative** are insured if hit by an underinsured **motor vehicle** while a pedestrian.

Policy Part 5(UIM) at 7 (bolding in original).

At the time of the accident, Borgia was living with his parents and was driving his own car which was not a car listed in the Declarations page of the Prudential policy, but was insured separately under his own Nationwide policy. Borgia sustained damages in excess of $15,000. However, the car

---

**2.** UM and UIM are covered in two distinct sections of the policy but the governing language as to coverage is identical in both sections.

that hit his was only insured for damages to Borgia up to its policy limit of $15,000. This action arose because Borgia, who did not opt for uninsured motorist (UM) or underinsured motorist (UIM) protection under his own policy, sought to recover his damages in excess of $15,000 from his parents' underinsured motorists policy coverage. Under the Prudential policy, as explained, *supra,* bodily injury to a resident relative such as appellant is covered only so long as the claimant is using a covered car.

Thus, although Borgia was a resident relative of the insureds under the Prudential policy, he was not using any of the covered cars under the policy and he was not a pedestrian. Additionally, language in the UM/UIM section of the policy fails to accord "covered person" status to Borgia by virtue of the fact that, although he was a resident relative and was injured by an underinsured motorist, it was while in a car owned by him and not insured under the policy. In short, there is coverage only if a named insured or a resident relative is injured while driving a vehicle listed in the Declarations page, while he is a pedestrian, or if the vehicle involved in the accident is *not owned by the named insured or by any resident relative.*[3]

Thus, considering all provisions of the policy, a covered person must not only be a named insured or a resident relative but also must be using a covered car as defined, *supra.* Under the circumstances therefore, Borgia is not a "covered person." As the policy expressly provides for arbitration *only* as between Prudential and a "covered person," and Borgia does not qualify as a covered person, he is in no position to compel arbitration. Therefore, the trial court erred in dismissing Prudential's declaratory judgment action and compelling arbitration.

Accordingly, I would affirm the Superior Court's holding that, under the circumstances, Borgia is not a "covered per-

---

**3.** I also note that Borgia's parents chose the non-stacking option for UM/UIM coverage.

son" under the Prudential policy's arbitration clause, and that entry of judgment in favor of Prudential on its declaratory judgment action is correct.[4]

Justice NEWMAN joins in the dissenting opinion.

4. This conclusion is not only pursuant to the express and unambiguous contract language, it is completely consistent with recent decisions of this Court upholding the "household exclusion" of UIM coverage for bodily injury suffered while not occupying a covered vehicle. Specifically, this Court upheld such provision in *Eichelman v. Nationwide Insurance Company*, 551 Pa. 558, 711 A.2d 1006 (1998), where the sole issue was whether a person who, as here, voluntarily elected to forgo UIM coverage on his own vehicle is precluded from recovering UIM benefits from separate policies issued to family members with whom he resides as a result of contract language in the family members' policy excluding such recovery when he is occupying his own vehicle. In upholding the exclusion, we noted that a claimant who voluntarily chose not to purchase UIM coverage received reduced premiums in return and was thereby required to be held to his voluntary choice. Additionally, we had certain instructive observations about the legislative intent behind the Motor Vehicle Financial Responsibility Law (MVFRL) in regard to such exclusions, notably:

Allowing the "household exclusion" language to stand in this case is further bolstered by the intent behind the MVFRL, to stop the spiralling [sic] costs of automobile insurance in the Commonwealth. If appellant's position [that a family member's UIM coverage should insure him when he is occupying his own, undeclared, car] were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in higher insurance premiums on all insureds (even those without family members living at their residence) since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorists coverage.

*Id.* at 566, 711 A.2d at 1010.