Dianna L. **VOGT,** Appellee

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY,** Appellant.

Superior Court of Pennsylvania.

Argued Nov. 30, 2005.
Filed May 25, 2006.

Charles W. Craven, Philadelphia, for appellant.

Robert F. Claraval, Harrisburg, for appellee.

Scott B. Cooper, Harrisburg, for Pa. Trial Lawyers, amicus curiae.

BEFORE: JOYCE, ORIE MELVIN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Liberty Mutual Fire Insurance Company appeals the April 25, 2005 Order denying its June 22, 2004 petition to strike or, in the alternative, open the $75,000 judgment entered on December 3, 2003, in favor of appellee on her Underinsured Motorists' (UIM) claim. The court denied relief primarily on the basis appellant failed to challenge the arbitrators' award within the appeal period provided. We reverse.

¶ 2 The trial court set forth the procedural history in detail as follows.

Procedurally, appellee Dianna L. Vogt (hereinafter appellee) made an Underinsured Motorists' (hereinafter UIM) claim against appellant, based upon an automobile accident that occurred on July 15, 2000. On June 20, 2002, appellee filed a petition to compel UIM arbitration. [The] court issued an Order that compelled appellant to participate in UIM arbitration on February 3, 2003. After the board of arbitrators, on August 28, 2003, found in favor of appellee in the amount of $75,000, appellee filed a petition to confirm the arbitration award

[on] December 2, 2003. On December 3, 2003, [the] court ordered that the arbitrators' award was confirmed and judgment was entered in the amount of $75,000, with interest from August 28, 2003 and court costs. Nearly ten (10) months later, on June 22, 2004, appellant filed a petition to strike or, in the alternative, to open the judgment of December 3, 2003.[1] ... After [the] court inadvertently issued an unrelated Order [on] April 18, 2005, [it] issued an amended Order, on April 25, 2005, which denied appellant's petition to strike or, in the alternative, to open judgment. On May 16, 2005, appellant filed a notice of appeal with the Superior Court of Pennsylvania that appealed [the] April 25, 2005 Order.

Trial Court Opinion, Cherry, J., 7/11/05, at 1–2. Appellant raises two issues for our review:

1. Did the trial court commit reversible error by refusing to strike the judgment entered in this case when the face of the record showed flaws which undermined the validity of that judgment?

2. Did the trial court err or abuse its discretion by denying the petition to open the judgment when that judgment was fatally flawed, the petition's filing was reasonably prompt, the petition presented solid reasons why the judgment should not stand, and opening the judgment would not have prejudiced the plaintiff?

Appellant's brief at 3.

¶ 3 Appellant first makes several arguments as to why the judgment should be stricken, including: the judgment was void because it was entered on a "snap default basis" in response to a petition to confirm without a rule to show cause and, moreover, the trial court did not issue a rule to show cause; the judgment was void because the petition was not properly served on appellant; the court entered judgment one day after appellee filed the petition to confirm, thereby preventing appellant from challenging the petition; the trial court failed to provide and record adequate notice of the judgment as required by Pa.R.C.P. 236; the petition to confirm did not explain how appellee was entitled to a $75,000 judgment where the UIM limit under the policy was $15,000 and appellant already had paid that amount to appellee; appellant's petition to strike was not untimely; the trial court is not required to confirm an arbitration award as soon as a petition to confirm is filed, in violation of appellant's due process; and finally, appellant did not lose its right to object to appellee's notice of her petition to confirm.

¶ 4 We begin by noting the principles of law applicable to our review of the denial of a petition to strike a judgment. "Our standard of review from the denial of a petition to strike a judgment is limited to whether the trial court manifestly abused its discretion or committed an error of law." *S. Med. Supply Co. v. Myers*, 804 A.2d 1252, 1256 (Pa.Super.2002). "A petition to strike a judgment will not be granted unless a fatal defect in the judgment appears on the face of the record. Matters outside of the record will not be con-

---

1. In this appeal, appellant raises the issue of whether the trial court miscalculated this time period from the time of the arbitrators' award on August 28, 2003, as opposed to measuring from the time judgment was entered by the court, on December 3, 2003. If measuring from the time when the court en- tered judgment, then appellant filed the petition to strike or open judgment approximately six months later, on June 22, 2004. As explained *infra*, we conclude the judgment was a nullity and could be attacked at any time; thus the timeliness of appellant's petition to strike or open judgment is not an issue.

sidered, and if the record is self-sustaining, the judgment will not be stricken." *Cargitlada v. Binks Mfg. Co.*, 837 A.2d 547, 549–550 (Pa.Super.2003) (citations omitted). For example, a judgment is properly stricken where the record indicates a fatal flaw such as defective service. *Cintas Corp. v. Lee's Cleaning Servs.*, 549 Pa. 84, 93, 700 A.2d 915, 919 (1997) *citing Sharp v. Valley Forge Medical Ctr. and Heart Hosp., Inc.*, 422 Pa. 124, 221 A.2d 185 (1966) and *Clymire v. McKivitz*, 350 Pa.Super. 472, 504 A.2d 937 (1986).

■ ¶ 5 Also pertinent to our review is that although the parties cite and rely heavily upon statutory provisions relating to *statutory* arbitration, we conclude, rather, that the provisions relating to *common law* arbitration apply in this case. The Uniform Arbitration Act, section 7302, **Scope of subchapter** (a) **General rule**, provides:

> An agreement to arbitrate a controversy on a nonjudicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to this subchapter

or any other similar statute, in which case the arbitration shall be governed by this subchapter.

42 Pa.C.S.A. § 7302(a). The agreement to arbitrate here, as set forth in the insurance policy, does not provide for statutory arbitration. Record No. 28, Exhibit 1, Liberty Mutual Auto Insurance Policy, at 13–14. Since the agreement to arbitrate does not provide for statutory arbitration and there is no evidence otherwise as to any agreement providing for statutory arbitration, the rules of common law arbitration apply.[2]

¶ 6 Section 7342 provides a list of provisions relating to statutory arbitration that are applicable in the context of common law arbitration. Those provisions include, *inter alia*, Section 7317, **Form and service of applications to court**, which provides,

> [e]xcept as otherwise prescribed by general rules, an application to the court under this subchapter shall be by petition and shall be heard in the manner and upon the notice provided or prescribed by law for the making and hearing of petitions in civil matters. *Unless the parties otherwise agree, notice of an initial application for an order of court shall be served in the manner provided*

---

**2.** *See also Borgia v. Prudential Ins. Co.*, 561 Pa. 434, 439, 750 A.2d 843, 846 (2000) (noting that since the arbitration clause of the underinsured motorists section of the insurer's policy did not provide for application of Pennsylvania's Uniform Arbitration Act, 42 Pa.C.S.A. §§ 7301–7320, i.e., statutory arbitration, nor did any subsequent agreement apply the Act, it was presumed that arbitration under the policy was governed by Subchapter B of Chapter 73 of the Judicial Code, 42 Pa.C.S.A. §§ 7341–7342, i.e. common law arbitration); *accord Hall v. Nationwide Mutual Ins. Co.*, 427 Pa.Super. 449, 629 A.2d 954, 956 (1993) (noting the case was submitted for common law and not statutory arbitration since the insurance policy did not expressly state and the parties did not otherwise agree that the Pennsylvania Arbitration Act should

apply); *Snyder v. Cress*, 791 A.2d 1198 (Pa.Super.2002) (holding that common law arbitration was proper where the proceedings were conducted pursuant to a written agreement of the parties which failed to specify the application of either common law or statutory rules); *Richmond v. Prudential Prop. & Cas. Ins. Co.*, 856 A.2d 1260, 1266 n. 5 (Pa.Super.2004), *appeal denied*, 583 Pa. 664, 875 A.2d 1076 (2005) (reiterating that "[w]here statutory arbitration is not specified... courts will assume that common law arbitration applies"); *Elkins & Co. v. Suplee*, 371 Pa.Super. 570, 538 A.2d 883 (1988) (finding that as there was no evidence the parties, either expressly or by implication, agreed to statutory arbitration, the provisions relating to common law arbitration applied).

*or prescribed by law for the service of a writ of summons in a civil action.*

42 Pa.C.S.A. § 7317 (emphasis supplied).

 ¶ 7 On December 2, 2003, appellee initiated a new civil action in the Court of Common Pleas in Dauphin County, when she filed her petition to confirm the arbitration award, in which she requested that the court enter an Order confirming the award, as well as a $75,000 judgment against appellant, with interest and court costs. Record No. 2. According to the explicit statutory language quoted above, this "initial application for an Order of court" was to be served "in the manner provided or prescribed by law for the service of a writ of summons in a civil action." 42 Pa.C.S.A. § 7317, *supra; see also Bank One Delaware N.A. v. Mitchell,* 70 Pa. D. & C.4th 353 (2005) (noting that pursuant to 42 Pa.C.S.A. § 7317, service of the petition to confirm an arbitration award shall be served in the manner provided by law for the service of a writ of summons in a civil action). The Pennsylvania Rules of Civil Procedure specifically mandate that "original process shall be served within the Commonwealth only by the sheriff." Pa. R.C.P. 400, **Person to Make Service.** Further, the Rules mandate that service of process on a corporation must be made to either:

(1) an executive officer, partner or trustee of the corporation or similar entity, or

(2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity, or

(3) an agent authorized by the corporation or similar entity in writing to receive service of process for it.

Pa.R.C.P. 424, **Corporations and Similar Entities.** Here, according to the trial court, appellee forwarded notice of her intent to file a petition to confirm arbitration award with a certificate of service, dated November 25, 2003. This notice was sent via regular and certified mail to Richard Shock, the Liberty Mutual claims adjustor assigned to this case. Trial Court Opinion, at 3. Appellee then filed her petition to confirm on December 2, 2003, and the court entered the Order confirming the award, and entered judgment, one day later, on December 3, 2003. *Id.* This attempt at service does not comply with the rules as cited above.

[A] court must have personal jurisdiction over a party to enter a judgment against it. Action taken by a court without jurisdiction is a nullity. Because jurisdiction over a person is dependent upon proper service, the Pennsylvania Supreme Court has held that the rules relating to service of process must be strictly followed.

*Aquilino v. Phila. Catholic Archdiocese,* 884 A.2d 1269, 1280 (Pa.Super.2005) *citing Dubrey v. Izaguirre,* 454 Pa.Super. 504, 685 A.2d 1391, 1393 (1996). We therefore agree with appellant and conclude that because service here was improper, the court did not have personal jurisdiction over appellant, and the subsequent action taken by the court in confirming the award and entering judgment is a nullity. We note that the timeliness of appellant's challenge to this judgment is not an issue since "a judgment may be attacked for lack of jurisdiction *at any time*[.]" *Bancorp Group, Inc. v. Pirgos, Inc.,* 744 A.2d 791, 792 (Pa.Super.2000) (emphasis supplied).

 ¶ 8 We also address appellant's allegation that the court erred in entering judgment on a "snap default basis" since appellee's petition to confirm lacked a rule to show cause. For its allegation that appellee was required to attach a rule to show cause to her petition, appellant relies upon 42 Pa.C.S.A. §§ 7313, **Confirmation**

of award by court, and 7317, *supra.*, and Rules 206.6, **Rule to Show Cause. Issuance as of Course. Stay. Form of Order** and 206.7, **Procedure After Issuance of Rule to Show Cause,** of the Pennsylvania Rules of Civil Procedure. Appellant's brief at 16. Section 7313 is a provision applicable to statutory arbitration not to common law arbitration proceedings. In contrast, however, Section 7317 *is* applicable to common law proceedings and provides that applications under this subchapter "shall be by petition" and that the rules relating to the making and hearing of petitions in civil matters apply. 42 Pa.C.S.A. § 7317; *see also Haegele v. Pennsylvania General Ins. Co.,* 330 Pa.Super. 481, 479 A.2d 1005, 1008 (1984) (reiterating that pursuant to Section 7317, an application to the court shall follow regular petition rules). Appellant argues that Rule 206.6 "requires the trial court to issue a rule to show cause," and "requires the petitioner to furnish the form by attaching it to the petition." Appellant's brief at 16. Appellant further argues that Rule 206.7 "conditions further action by the court on the issuance and proper service of the rule to show cause." *Id.* Appellant misapprehends these rules. First, Rule 239.2, **Petitions, Rule to Show Cause, Local Rules 206.1(a) and 206.4(c),** provides that every court shall promulgate a local rule 206.4(c), which describes the court's procedures for the issuance of a rule to show cause. Pa. R.C.P. 239.2(b). Rule 206.4, **Rule to Show Cause. Alternative Procedures,** provides that the issuance of a rule to show cause is "discretionary with the court as provided by Rule 206.5 [**Rule to Show Cause. Discretionary Issuance. Stay. Form of Order**] *unless the court by local rule adopts the procedure of Rule 206.6 providing for issuance as of course.*" Pa. R.C.P. 206.4(a) (emphasis supplied). Dauphin County did not adopt rule 206.6, **Rule to Show Cause. Issuance as of Course.**

**Stay. Form of Order.** In addition, the local Rule 206.4(c)(3) as adopted by Dauphin County, provides that a judge "*may* issue a rule to show cause pursuant to Pa.R.C.P. 206.5 (Discretionary Issuance)." (emphasis supplied). Further, Rule 206.5(b) provides "[a] petitioner seeking issuance of a rule to show cause shall attach to the petition a proposed Order in the form prescribed by subdivision (d) and give notice to all other parties of the intention to request the court to issue the rule." *Id.* Accordingly, it is beyond a doubt that appellee's inclusion of a rule to show cause with the petition, as well as the trial court's issuance of a rule to show cause, was discretionary. With all of that said, however, we determine the trial court, by its action in confirming the award and entering judgment one day after appellee filed the petition to confirm, improperly prevented appellant from challenging the petition. Appellant was entitled to file an *answer* to the petition pursuant to Rule 206.2, **Answer.** While not binding precedent to this Court, we agree with the Commonwealth Court's articulation of this requirement:

> Turning to the procedures mandated for petition practice under the Rules, we note that they provide sufficient safeguards to protect [one's] constitutional right to notice and an opportunity to be heard. *Pa.R.C.P. 206.2 provides for answers to be filed to petitions. Implicit in Rule 206.2 is that the respondent be given notice of the petition so as to be able to respond in an answer.*

*In the Interest of M.B.,* 686 A.2d 877, 882 (Pa.Commw.1996) (emphasis supplied). The court, in entering judgment one day after appellee filed the petition to confirm, denied appellant the opportunity to be heard, to which it was entitled. For the above stated reasons, the Order denying

appellant's petition to strike judgment is reversed and this matter is remanded.

¶ 9 For purposes of remand, we note the following principles. Section 7342, **Confirmation and judgment**, provides, in pertinent part:

> On application of a party made more than 30 days after an award is made by an arbitrator under section 7341 (relating to common law arbitration) the court *shall* enter an order confirming the award and shall enter a judgment or decree in conformity with the order.

42 Pa.C.S.A. § 7342 (emphasis supplied). This language has been interpreted as mandatory. *See Beriker v. Permagrain Products, Inc.,* 347 Pa.Super. 102, 500 A.2d 178 (1985) (concluding that where a party took no action to modify a common law arbitration award for more than three months after it was entered, at which point the opposing party petitioned the court to confirm the award, it was mandatory for the court to confirm the award upon application of either party pursuant to Section 7342(b)); *accord Snyder v. Cress,* 791 A.2d 1198 (Pa.Super.2002); *see also Elkins & Co. v. Suplee,* 371 Pa.Super. 570, 538 A.2d 883 (1988) (holding that where no action was taken to modify a common law arbitration award until the appellant filed preliminary objections, and an answer and new matter to the appellee's petition to confirm, and more than five months had elapsed since the arbitrators issued the award, Section 7342(b) required that the court affirm the award). There is no question that appellant failed to take any action to modify the award within the thirty day period provided by Section 7342(b), and, in fact, failed to take any action whatsoever until it filed the petition to strike/open the judgment, more than six months after judgment was entered. The inquiry does not end there, however.

¶ 10 Judicial review of a common law arbitration award is very narrow. *Borgia v. Prudential Insurance Company,* 561 Pa. 434, 440, 750 A.2d 843, 846–847 (2000). Arbitrators are the final judges of law and fact and their award will not be disturbed for mistakes of either. *Id.* Such awards are binding and may not be vacated or modified "even if blatantly at odds with the contract involved" absent "a showing of a denial of a hearing or fraud, misconduct, corruption, or similar irregularity leading to an unjust, inequitable, or unconscionable award." *Id. citing Runewicz v. Keystone Ins. Co.,* 476 Pa. 456, 461, 463, 383 A.2d 189, 192, 193 (1978); *see also* 42 Pa.C.S.A. § 7341; *Snyder supra,* at 1201 (observing extant case law provides "only claims which assert some impropriety in the arbitration process may be the subject to an appeal—to the exclusion of appeals which seek reviews of the merits" and concluding, "while the appeal court will entertain a claim that there has been a systemic defect in the proceedings, attempts to add to, or reopen, litigated issues or to rekindle the reconsideration of the merits are not subject to appeal"). To be entitled to relief, appellant must make such an allegation.

¶ 11 Certainly, the fact that appellant's policy limit for UIM coverage was $15,000, yet the arbitrators awarded appellee a $75,000 judgment against appellant is contrary to the insurance policy at issue and is unjust. This alone, however, does not meet the above standard that there was an "impropriety in the arbitration process" such that the award can be overturned. *See Snyder* at 1202, *citing Runewicz* at 463, 383 A.2d at 193 (reiterating that even a common law arbitration award which is "blatantly at odds with the contract involved" is not a basis for finding misconduct to justify setting aside the award, and thus, since the appellant failed

to challenge the arbitration award within thirty days pursuant to Section 7342(b), the award must be confirmed). We note that in *Hall v. Nationwide Mutual Ins. Co.,* 427 Pa.Super. 449, 629 A.2d 954 (1993), a panel of arbitrators awarded the appellee $75,000 and provided that the appellant insurer was responsible for fifty percent of that amount, or $37,500, even though the uninsured motorist coverage in the policy at issue was limited to $25,000. The appellant insurer paid the appellee insured $25,000. The court confirmed the arbitrators' award and entered judgment for the balance of $12,500. The insurer appealed, arguing that the court's entry of judgment for $12,500 exceeded the permissible scope of review of the decision by the arbitrators. We affirmed the Order confirming the award because the appellant failed to challenge the arbitrators' award within thirty days pursuant to 42 Pa.C.S.A. § 7342(b). We noted however that the appellant did not argue before the trial court or on appeal, that the arbitrators' award was ambiguous or in need of clarification. If it had done so, the court would have had the opportunity to determine whether to accept evidence regarding the arbitrators' intended award. *Hall,* at 957 n. 4. Appellant here has argued that, in accordance with Dauphin County practice, the arbitrators were not informed of and did not consider the policy limits, and that their award was a measurement of appellee's "overall damage" caused by the underinsured motorist, not a measurement of appellant's liability. Appellant's brief at 5, 8–9. Appellant contends the arbitrators "did not express any intent to increase Vogt's UIM limits, or entitle Vogt to a duplicate payment of the $25,000 which the underinsured motorist's liability insurer already paid." *Id.,* at 9. Apparently, appellant believes there is some ambiguity in the arbitrators' award.

¶ 12 We have illuminated the burden appellant must meet in order to challenge the arbitrators' award at this stage, since appellant failed to challenge the award within the thirty days provided in Section 7342(b).

¶ 13 Based upon our above-stated conclusions, there is no need for this Court to review appellant's remaining allegations of error.

¶ 14 As the Order denying the petition to strike the judgment is reversed, the $75,000 judgment for appellee, which is blatantly at odds with appellant's $15,000 liability limit under the UIM insurance coverage, must be vacated as it is a nullity due to the improper service and the court's failure to allow appellant to file an answer to the petition to confirm. Moreover, the Order confirming the arbitration award must be vacated and appellant must then be permitted to file its answer to the petition.

¶ 15 Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

¶ 16 Concurring Opinion by JOYCE, J.

CONCURRING OPINION BY JOYCE, J.:

¶ 1 I concur in the result reached by the Majority. I write separately to address an issue that warrants further discussion.

¶ 2 In an underinsured motorists (UIM) arbitration, the arbitrators determine the total damages suffered by a claimant. Generally, neither the underlying liability limits nor the UIM limits are revealed to the arbitrators before damages are determined. That was the case in the UIM proceedings at issue here. Inherent in the process is an expectation that, regardless of the arbitrators' award, the maximum recovery will be the policy limits. *See Browne v. Nationwide Mut. Insurance*

*Company,* 713 A.2d 663 (Pa.Super.1998) (an insurer's obligation to its insured is capped by the applicable policy limits).[3]

¶ 3 An arbitration award in excess of UIM limits is not comparable to a jury award in a tort action in an amount that exceeds the liability limits. In the tort action, the injured party can recover the limits under the policy and then pursue the tortfeasor personally for any damages exceeding the available limits. By contrast, a UIM claim is purely a matter of contract. When Appellee, Dianna Vogt, entered into her contract with Liberty Mutual for automobile insurance, she elected to purchase UIM coverage in the amount of $15,000 per person and $30,000 per accident. Whether her damages were $15,000 or $15 million, the most Liberty Mutual should be obligated to pay under the terms of the contract is her $15,000 limit of UIM coverage. To hold otherwise renders the selection of limits meaningless.

¶ 4 The Majority notes that the arbitration in this case was common law arbitration.[4] As this Court has recognized, "[t]he review of a common law arbitration award is narrowly circumscribed." *F.J. Busse*

*Co., Inc. v. Sheila Zipporah, L.P.,* 879 A.2d 809, 811 (Pa.Super.2005); *see also Richmond v. Prudential Property and Casualty Insurance Company,* 856 A.2d 1260 (Pa.Super.2004) *(en banc).*

¶ 5 A challenge to a common law arbitration award must be made within thirty days of the award. *See Hall v. Nationwide Mut. Ins. Co., supra,* 427 Pa.Super. 449, 629 A.2d 954, 957 (1993). As noted above, the grounds for the challenge are greatly restricted. As set forth in the statute, the only recognized bases for vacating or modifying the award are denial of a hearing or "fraud, misconduct, corruption or other irregularity caus[ing] the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S.A. § 7341.[5] Absent a challenge, a party may petition the court to enter an order confirming an award, and to enter a judgment or decree in conformity with that order. 42 Pa.C.S. § 7342(b) (**Confirmation and judgment**).

¶ 6 Clearly, Liberty Mutual did not mount a challenge to the award. However, I do not read Liberty Mutual's argu-

---

**3.** Liberty Mutual's expectation that its maximum obligation was $15,000 is evidenced by its tendering of the policy limits by check dated September 2, 2003, under cover of letter dated September 3, less than a week after the issuance of the arbitration award. By letter dated September 12, Vogt's counsel returned the check and, for the first time, asserted that Liberty Mutual owed Vogt $50,000, *i.e.,* the $75,000 awarded by the arbitrators, less the $25,000 recovered from the tortfeasor's policy.

**4.** The Majority contends that the arbitration in this case was common law arbitration in accordance with language found on pages 13 and 14 of the Liberty Mutual policy. Document 28, Exhibit 1, in the certified record. I note that Part C of the policy—attached to Document 28 as Exhibit 1—includes uninsured motorists ("UM") coverage only. While the declarations page for the policy

reveals that the policy included a UIM endorsement, the endorsement itself is not part of the record. My comments are based on the presumption that the UIM endorsement was silent as to the type of arbitration agreed to, thereby invoking common law arbitration, as was the case in the policy's UM provisions.

**5.** The statutory provisions relating to common law arbitration are set forth in 42 Pa.C.S. §§ 7341–7342. Pursuant to 42 Pa.C.S. § 7342, certain provisions of the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7320, apply to common law arbitration. However, Sections 7311 (**Change of Award by arbitrators**), 7314 (**Vacating award by court**), and 7315 (**Modification or correction of award by court**) are not among them. Therefore, those opportunities for review of arbitration awards pursuant to the Uniform Arbitration Act are not available under common law arbitration.

ment on appeal as contending the arbitrators' award itself is unjust, inequitable or unconscionable. Rather, I construe its position to be simply that it should not be required to pay more than the limits of UIM coverage purchased by Vogt. Under that scenario, I believe that the appropriate course on remand would involve Vogt's presentation of an application to confirm the award and enter judgment in her favor, followed by Liberty Mutual's response with confirmation of the UIM limits purchased by Vogt. The court would then confirm the arbitrators' award of $75,000, and enter judgment in the amount of $15,000, the policy limits that Vogt herself acknowledges as the coverage purchased.[6] This would not constitute molding or changing the award. The award would be confirmed in the amount appearing on the arbitrators' award ("The majority finds in favor of the Plaintiff [sic] in the Amount of $75,000.00"). At the same time, the ultimate judgment entered against Liberty Mutual in the amount of the $15,000 UIM limits would reflect the agreement of the parties to the contract.[7] Only in this way can the integrity of the contract be preserved.[8]

---

6. See Document 10 (Vogt's Answer to Liberty Mutual's Petition to Strike) at ¶ 2 ("It is admitted that [Liberty Mutual] issued a policy of automobile insurance to [Vogt]. Vogt's policy contained coverage limits for UIM in the amount of $15,000 per person and $30,000 per accident.").

7. Although Vogt's counsel sought entry of judgment in the amount of $75,000, even he does not suggest that Vogt is entitled to recover the full amount of the $75,000 award from Liberty Mutual. "Since [Vogt] recovered $25,000 from the tortfeasor, the net amount owed to her is $50,000." Document 10, Exhibit A, in the certified record; "Therefore, this judgment remains open and valid in the amount of $75,000. Liberty Mutual is entitled to a credit for the $25,000 that [Vogt] received from the tortfeasor ...." Document 6, Exhibit C. Reducing the amount of the judgment to reflect the UIM limits purchased

does not constitute "molding" the award any more so than reducing the judgment by giving a credit for the underlying BI limits.

8. I do not find this result to be in conflict our Supreme Court's rulings in *Borgia v. Prudential,* 561 Pa. 434, 750 A.2d 843 (2000), *Runewicz v. Keystone Ins. Co.,* 476 Pa. 456, 383 A.2d 189 (1978), or *Freeman v. Ajax Foundry Products, Inc.,* 398 Pa. 457, 159 A.2d 708 (1960). In each of those cases, when the Court referred to confirming arbitration awards even if the result would require altering terms of the contract, the Court was not referring to coverage *amounts.* Rather, the Court was referring to arbitration awards based on policy language governing disputed coverage *issues.* I find that situation readily distinguishable from the situation present here, where Vogt is attempting to recover an amount greater than the limits of coverage she admits she purchased under the policy.