J-A10031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THOMAS R. MILLER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| COLLEEN H. MILLER | |
| Appellant | No. 797 WDA 2015 |

Appeal from the Order April 20, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-09-002320-016

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED OCTOBER 27, 2016**

Appellant, Colleen H. Miller ("Wife"), challenges the order entered in the Allegheny County Court of Common Pleas, as made final by the entry of a divorce decree on July 2, 2015.[1]  We affirm.

The trial court sets forth the relevant facts and procedural history of this case as follows:

> Wife and [Appellee] Thomas Miller ("Husband") were married on June 24, 1972, and separated on October 30,

_____

[1] A pre-divorce decree order is interlocutory and unappealable before the court enters a divorce decree. **Campbell v. Campbell**, 516 A.2d 363, 365-66 (Pa.Super. 1986), appeal denied, 515 Pa. 598, 528 A.2d 955 (1987). When Wife filed her notice of appeal challenging the orders dated January 30, 2015, and April 20, 2015, the court had not yet entered a final divorce decree.  Therefore, Wife's notice of appeal when filed was technically premature.  **Id.**  The subsequent entry of the divorce decree on July 2, 2015, however, rendered both orders ripe for appellate review.  **Id.**

2007. Wife filed a Complaint in Support on April 20, 2009. Husband filed a Complaint in Divorce on May 5, 2009. Wife filed a Petition Raising Claims for alimony *pendente lite* ("APL"), alimony and preservation of life and medical insurance policies on September 17, 2009. In response to a Motion presented by Wife, the [c]ourt ordered on September 22, 2009, that the parties evenly split income from marital rental properties and Husband's military pension during the pendency of the action. On October 27, 2009, Wife was granted a $20,000 advance for litigation costs. On February 24, 2010, the [c]ourt issued an order prohibiting both parties from dissipating marital assets. Both parties were granted a $20,000 advance against equitable distribution per Order of the[c]ourt dated August 30, 2010. The [c]ourt referred the case to Master Miller for a three (3) day trial to address all outstanding issues on December 17, 2010. The parties underwent extensive discovery and presented several discovery-related motions to the [c]ourt. An equitable distribution hearing was held before Master Miller on May 9, 10, 11, and 12, 2011. The transcript shows that on May 12, 2011[,] the parties discontinued the hearing prematurely, as they anticipated settling the case or continuing the hearing in September 2011.

The parties did not return for additional testimony before Master Miller. On January 28, 2012, the parties signed a "Binding Mediation Agreement" ("BMA"). What the parties agreed to by signing that document is an issue in this appeal…. In the BMA the parties named Dr. Joseph Besselman as their "Mediator." The process that occurred during the following two (2) years is disputed…. Dr. Besselman produced a "Mediation Settlement Agreement" ("MSA") outlining a resolution to the parties' disputed claims. Dr. Besselman and Husband signed the agreement on June 6, 2014. Wife did not sign the agreement.[2] On

---

[2] After accepting comments from the parties, Dr. Besselman sent the parties a revised MSA on June 27, 2014. Wife did not sign the revised agreement either. Nevertheless, in the parties' initial BMA, they agreed to submit the matter to binding arbitration and that the MSA would become final/binding
*(Footnote Continued Next Page)*

July 29, 2014, Husband filed a Motion for Entry of Final Decree in Divorce and Equitable Distribution Order wherein he sought to have the MSA enforced. Both parties submitted briefs to the [c]ourt regarding the enforceability of the MSA. The [c]ourt held a conciliation on the matter on September 22, 2014. Oral argument on the issue was held on January 30, 2015, and a fact-finding hearing was held on April 13, 2015. On April 20, 2015, the [c]ourt issued an Order holding that:

1. Wife failed to show that her signature on the BMA had been obtained fraudulently.

2. The BMA was enforceable.

3. Wife failed to show fraud, misconduct, corruption or other such irregularity in the arbitration process which caused the arbitrator to render such an unjust, inequitable and unconscionable award so as to make the award unenforceable.

4. Wife failed to show that any issues resolved in the MSA were outside the scope of arbitration agreed to by the parties.

5. The MSA was enforceable.

(Trial Court Opinion, filed on July 21, 2015, at 1-3) (citations to record omitted). On May 18, 2015, Wife filed a notice of appeal challenging the court's orders of January 30, 2015, and April 20, 2015. By order entered May 22, 2015, the court directed Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); and Wife complied on June 9, 2015. The court entered a divorce decree on July 2, 2015, which

_(Footnote Continued)_ ─────────────────

on the parties within 14 days of Dr. Besselman's signature on the MSA, regardless of whether either party failed to sign it.

incorporated but did not merge the MSA.[3]

Wife raises the following issues for our review:

> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT DETERMINED THAT THE ARBITRATOR POSSESSED AUTHORITY TO MAKE BINDING AWARDS ON THE ISSUES OF ALIMONY AND SUPPORT WHERE THOSE MATTERS WERE OMITTED AND NOT OTHERWISE IDENTIFIED IN THE [BMA] SIGNED BY THE PARTIES.
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION BY FAILING TO SET ASIDE OR OTHERWISE VACATE THE DECISION OF THE ARBITRATOR ON THE GROUNDS OF IRREGULARITY AND LACK OF DUE PROCESS SINCE THE ARBITRATOR NEVER CONDUCTED A HEARING, IDENTIFIED THE ISSUES TO BE ARBITRATED OR NOTIFIED THE PARTIES OF HIS INTENTION TO ISSUE A FINAL RULING UPON THE ISSUES ALLEGEDLY SUBMITTED TO HIM.
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION BY FAILING TO SET ASIDE OR OTHERWISE VACATE THE DECISION OF THE ARBITRATOR BECAUSE OF FRAUD PURSUANT TO THE FACTS ADDUCED AT THE HEARING WHICH PROVED THAT [WIFE], SIGNED THE [BMA] WITH THE KNOWLEDGE AND EXPECTATION THAT THE ARBITRATOR WOULD BE UNABLE TO MAKE ANY BINDING DECISION AS TO MATTERS OF ALIMONY AND SUPPORT.

(Wife's Brief at 3-4).

_____

[3] The divorce decree in part states: "The **Binding Arbitration Agreement** executed on July 9, 2014, shall be incorporated but not merged into this Decree for the limited purposes of enforcement and not modification" (emphasis added).  We think the court meant to incorporate but not merge the MSA into the decree, because the MSA was the agreement made final in July 2014.  The court might well consider amending the decree *nunc pro tunc* to specify the MSA as incorporated but not merged into the divorce decree.

Review of a common law arbitration award is set forth in Subchapter B of Pennsylvania's Uniform Arbitration Act as follows:

### § 7341.  Common law arbitration

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa.C.S.A. § 7341.  "The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to a reversal for a mistake of either."  *Garango v. Terminix Intern. Co., L.P.*, 784 A.2d 188, 193 (Pa.Super. 2001) (internal citations and quotes omitted).  Thus, neither the appellate court "nor the trial court may retry the issues addressed in arbitration or review the tribunal's disposition of the merits of the case." *F.J. Busse Co., Inc., v. Sheila Zipporah, L.P.*, 879 A.2d 809, 811 (Pa.Super. 2005), *appeal denied*, 587 Pa. 694, 897 A.2d 457 (2006) (quoting *McKenna v. Sosso*, 745 A.2d 1, 4 (Pa.Super. 1999), *appeal denied*, 563 Pa. 677, 759 A.2d 924 (2000)).  "Rather, we must confine our review to whether the appellant was deprived of a hearing or whether fraud, misconduct, corruption or other irregularity tainted the award." *McKenna, supra* at 4 (internal quotations omitted).

In the context of common law arbitration, "irregularity refers to the process employed in reaching the result of the arbitration, not to the result

itself." ***Garango, supra***. "Our Supreme Court has stated that the phrase 'other irregularity' in the process employed imports 'such bad faith, ignorance of the law and indifference to the justice of the result' as would cause a court to vacate an arbitration award." ***F.J. Busse Co., Inc., supra*** (citing ***Allstate Ins. Co. v. Fioravanti***, 451 Pa. 108, 299 A.2d 585 (1973)).

> In most cases where an irregularity is alleged, our appellate courts have denied relief. ***See, e.g., Runewicz v. Keystone Ins. Co.***, [476 Pa. 456, 383 A.2d 189 (1978)] ([holding where] appellant alleged arbitrator's award contradicted insurance policy language [there was] no irregularity even though award patently at odds with contract); ***Hain v. Keystone Ins. Co.***, 326 A.2d 526, 527 ([Pa.Super.] 1974) ([stating:] "While the damages granted in this case may have been at variance with the language of [the insurance policy], we do not believe that the award meets the ***Fioravanti*** criteria for vacating an arbitration decision"). ***Compare Paugh v. Nationwide Ins. Co.***, 420 A.2d 452 ([Pa.Super.] 1980) ([holding] irregularity found when plaintiffs kept pertinent testimony from arbitrators, therefore precluding arbitrators from fashioning award limiting plaintiffs' possible double recovery).

***Chervenak, Keane & Co. (CKC Associates) v. Hotel Rittenhouse Associates, Inc.***, 477 A.2d 482, 485 (Pa.Super. 1984). "In addition, as the arbitrator's authority is restricted to the powers the parties have granted [him] in the arbitration agreement, we may examine whether the common law arbitrator exceeded the scope of his authority." ***Garango, supra***.

Nevertheless,

> [T]he law favors non-judicial dispute resolution that the parties have agreed to. [Alternative] dispute resolution is economical in terms of time, expenditure of judicial resources and transactional costs. Limited judicial review

also imposes finality in a contested matter. To permit anything but limited judicial review defeats the purpose of…arbitration.

*F.J. Busse Co., Inc., supra* at 811. Thus, every presumption favors the validity of the arbitration award. *Reinhart v. State Auto. Ins. Ass'n*, 363 A.2d 1138 (Pa.Super. 1976). In other words, as a general rule "[a]rbitration agreements are declared by statute to be 'valid, enforceable and irrevocable[.]'" *U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874, 878 (Pa.Super. 2006), *appeal denied*, 593 Pa. 729, 928 A.2d 1291 (2007) (citing 42 Pa.C.S.A. § 7303). Therefore, "[j]udicial review of a common law arbitration award is very narrow." *Vogt v. Liberty Mut. Fire Ins. Co.*, 900 A.2d 912, 919 (Pa.Super. 2006).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Donald R. Walko, Jr., we conclude Wife's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed July 21, 2015, at 4-16) (finding: text of parties' BMA shows that both parties intended to be bound by result of process; Wife's contention that parties did not intend to engage in common law arbitration is at odds with document she signed; parties agreed to participate in common law arbitration and were therefore bound by its result; as to scope of arbitration agreement, full scope of agreement remained unknown by design; Paragraph 6 of BMA empowered arbitrator to

submit MSA to court to obtain final resolution of parties' divorce; parties' divorce could not be finally resolved if issues remained outstanding; in MSA, arbitrator rendered decisions on all outstanding issues, including APL and alimony; scope of BMA as whole was ambiguous; parties' testimony on their intent and circumstances surrounding execution of BMA was necessary for court to determine scope of BMA; court, therefore, held fact-finding hearing; court's decision to hear evidence and testimony on scope of BMA was proper; Wife cites no authority to support her contention that alimony/APL/support were outside scope of BMA; Wife also presented her claim for alimony to arbitrator; court declared Wife's testimony on scope of BMA was incredible; Husband testified that he understood BMA put all issues pending in parties' divorce case into arbitration; court found Husband's testimony on this point credible; Wife offers nothing to justify invalidating MSA award because arbitrator specifically selected by parties was not legally trained; likewise, court rejected Wife's due process claim, where law permits parties to waive formal arbitration hearing, and Wife's positions on alimony, support and APL were sent to arbitrator via emails, which she did not challenge as either rejected or undelivered; Wife's allegations of inequity in MSA award consisted of unsupported allegations and approximations, which was sufficient evidence that she was unhappy with award but not that it was "inequitable"; Wife also failed to show arbitration process was conducted with unfair bias or fraud favoring Husband, or with any irregularity or

mistake, sufficient to invalidate MSA; based on evidence presented, BMA and MSA must stand).[4]   Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/27/2016

---

[4] Additionally, in her brief, Wife contends the BMA is unenforceable because: (1) the parties did not have a meeting of the minds when they executed the BMA; (2) the BMA is the product of Husband's fraudulent conduct; and (3) the BMA is unconscionable.  Wife also asserts in her brief the arbitration procedure was improper for several additional reasons.  Specifically, Wife avers she did not receive notice of Husband's positions and the disputed issues Husband submitted to Dr. Besselman.  Wife alleges she was unaware Dr. Besselman permitted Husband to make corrections to the first draft of the MSA.  Wife also maintains Dr. Besselman was biased in favor of Husband because the two were former colleagues and friends.  Further, Wife claims there is no evidence Dr. Besselman considered Husband's possible improprieties.  Wife failed to specifically raise these challenges to the BMA and the arbitration process in her Rule 1925(b) statement.  Therefore, Wife has waived these issues for purposes of appeal. ***See Lineberger v. Wyeth***, 894 A.2d 141, 148-49 (Pa.Super. 2006) (stating issues not raised in Rule 1925 statement will be deemed waived). ***See also Commonwealth v. Hill***, 609 Pa. 410, 428, 16 A.3d 484, 494 (2011) (stating: "Rule 1925(b) waivers may be raised by the appellate court *sua sponte*"); ***In re L.M.***, 923 A.2d 505 (Pa.Super. 2007) (applying Rule 1925 waiver standards in family law context).

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

THOMAS R. MILLER,

Plaintiff,

v.

COLLEEN H. MILLER,

Defendant.

No: FD 09-002320-016
Superior Court No.: 797 WDA 2015

**OPINION**

BY:

Honorable Donald R. Walko, Jr.
706 City-County Building
414 Grant Street
Pittsburgh, PA 15219

Copies to:

Counsel for Plaintiff:
Brian Vertz, Esquire
Pollock Begg Komar Glasser & Vertz, LLC
437 Grant Street, Suite 501
Pittsburgh, Pennsylvania 15219

Counsel for Defendant:
Margie Hammer, Esquire
Brad R. Korinski, Esquire
Lieber Hammer Huber & Bennington, P.C.
5528 Walnut Street
Pittsburgh, Pennsylvania 15232

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

THOMAS R. MILLER,

              Plaintiff,

    v.

COLLEEN H. MILLER,

              Defendant.

FAMILY DIVISION

Docket No.: FD 09-002320-016

Superior Court No.: 797 WDA 2015

## OPINION

WALKO, J.                                            July 20, 2015

Defendant Colleen Miller ("Wife") appeals this Court's January 30, 2015 Order of Court. For the reasons set forth in this Opinion, the Order of Court should be affirmed.

## BACKGROUND & PROCEDURAL HISTORY

Wife and Plaintiff Thomas Miller ("Husband") were married on June 24, 1972 and separated on October 30, 2007. Wife filed a Complaint in Support on April 20, 2009. Husband filed a Complaint in Divorce on May 5, 2009. Wife filed a Petition Raising Claims for alimony *pendente lite* ("APL"), alimony and preservation of life and medical insurance policies on September 17, 2009. In response to a Motion presented by Wife, the Court ordered on September 22, 2009 that the parties evenly split income from marital rental properties and Husband's military pension during the pendency of the action. On October 27, 2009 Wife was granted a $20,000 advance for litigation costs. On February 24, 2010 the Court issued an order prohibiting both parties from dissipating marital assets. Both parties were granted a $20,000 advance against

1

equitable distribution per Order of Court dated August 30, 2010. The Court referred the case to Master Miller for a three (3) day trial to address all outstanding issues on December 17, 2010. The parties underwent extensive discovery and presented several discovery-related motions to the Court. An equitable distribution hearing was held before Master Miller on May 9, 10, 11, and 12, 2011. The transcript shows that on May 12, 2011 the parties discontinued the hearing prematurely, as they anticipated settling the case or continuing the hearing in September 2011. Tr. Part 4 at 79-86.

The parties did not return for additional testimony before Master Miller. On January 28, 2012, the parties signed a "Binding Mediation Agreement" ("BMA"). What the parties agreed to by signing that document is an issue in this appeal and will be discussed *infra*. In the BMA the parties named Dr. Joseph Besselman as their "Mediator." The process that occurred during the following two (2) years is disputed and will be discussed *infra*. Dr. Besselman produced a "Mediation Settlement Agreement" ("MSA") outlining a resolution to the parties disputed claims. Dr. Besselman and Husband signed the agreement on June 6, 2014. Wife did not sign the agreement. On July 29, 2014 Husband filed a Motion for Entry of Final Decree in Divorce and Equitable Distribution Order wherein he sought to have the MSA enforced. Both parties submitted briefs to the Court regarding the enforceability of the MSA. The Court held a conciliation on the matter on September 22, 2014. Oral argument on the issue was held on January 30, 2015 and a fact-finding hearing was held on April 13, 2015. On April 20, 2015 the Court issued an Order holding that:

> 1. Wife failed to show that her signature on the BMA had been obtained fraudulently.
>
> 2. The BMA was enforceable.

2

3. Wife failed to show fraud, misconduct, corruption or other such irregularity in the arbitration process which caused the arbitrator to render such an unjust, inequitable and unconscionable award so as to make the award unenforceable.

4. Wife failed to show that any issues resolved in the MSA were outside the scope of arbitration agreed to by the parties.

5. The MSA was enforceable.

Wife timely filed a Notice of Appeal of the Court's April 20, 2015 Order of Court on May 20, 2015. On June 17, 2015 the Court denied Wife's Motion for Reconsideration of the April 20, 2015 Order of Court.

## STANDARD OF REVIEW

The Superior Court has plenary review of issues of contract interpretation. "The proper interpretation of a contract is a question of law and [the appellate court's] scope of review is plenary. [The appellate court] need not defer to the conclusions of the trial court and are free to draw their own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." *Liddle v. Scholze,* 768 A.2d 1183, 1185 (Pa.Super. 2001) (citations omitted).

Where contract interpretation requires questions of fact to be ruled upon preliminarily, the fact and credibility findings of the trial court "will not be disturbed [by the appellate court] absent an abuse of discretion, a capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings." *Lilly v. Markvan,* 563 Pa. 553, 763 A.2d 370, 372 (2000) (quoting *Masloff v. Port Auth. of Allegheny County,* 531 Pa. 416, 613 A.2d 1186, 1188 (1992)).

## DISCUSSION

Wife listed nineteen (19) issues in her Concise Statement of Matters Complained of on

3

Appeal. Most of what is contained in Wife's Concise Statement is argument for her position. The Court understands Wife's issues as follows:

1. The Court erred in its Order of Court dated January 30, 2015 when it held that the parties agreed to participate in common law arbitration and were therefore bound by the result.

2. The Court erred by hearing evidence and testimony pertaining to whether issues of alimony, support or APL were within the scope of arbitration because those issues were not raised in the BMA.

3. The Court erred by finding that issues of support, alimony, and alimony *pendente lite* ("APL") were within the scope of the BMA.

4. The Court erred by assigning Wife the burden to prove that support, APL and alimony were not within the scope of the BMA.

5. The Court erred by finding that the process the parties underwent was sufficient to constitute common law arbitration.

6. The Court erred by failing to set aside the Mediation Settlement Agreement ("MSA") due to fraud, irregularity, bias, mistake, and/or abuse of discretion.

7. The Court erred by upholding the MSA's finding that Husband had overpaid alimony *pendente lite* when no Petition to Modify alimony *pendente lite* had been filed and the issue was therefore not properly before the Court.

**The Court properly concluded that the parties agreed to participate in binding common law arbitration.**
*(Matter 1 Complained of on Appeal)*

Wife argues that the Court erred in holding that the parties agreed to be bound by the results of their arbitration with Dr. Besselman. In her arguments before this Court, Wife relied heavily on the fact that the BMA includes the word "mediation" several times and does not include the word "arbitration."

4

Black's Law Dictionary provides the following pertinent definitions:

> **mediation.** A method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution; conciliation.

> **arbitration.** A dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute. The parties to the dispute may choose a third party directly by mutual agreement, or indirectly, such as by agreeing to have an arbitration organization select the third party. — Also termed (redundantly) *binding arbitration.*

The law of contracts governs the determination of whether a valid agreement to arbitrate exists. *Huegel v. Mifflin Const. Co. Inc.*, 796 A.2d 350, 354 (Pa.Super. 2002). "It is ...well established that under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties. In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning." *Kripp v. Kripp*, 578 Pa. 82, 90 (2004) (citations omitted). "No technical or formal words are necessary to constitute a reference of a controversy to arbitration, but it must clearly appear that the intention of the parties was to submit their differences to a tribunal and be bound by the decision reached by that body on deliberation." *Scholler Bros. v. Otto A. C. Hagen Corp.*, 44 A.2d 321, 322 (Pa.Super. 1945) (citations omitted). If parties do not explicitly agree to participate in statutory arbitration, common law arbitration rules apply. *Gentile v. Weiss*, 477 A.2d 544, 546 (Pa.Super. 1984).

The BMA repeatedly uses the word "mediate" when describing the process to which the parties are agreeing. The BMA does not include an explicit definition for "mediation." Wife argues that the parties understood "mediation" as non-binding alternative dispute resolution. Husband contends that the parties understood "mediation" to mean alternative dispute resolution

5

that produced binding results. The following parts of the BMA discuss the definition of "mediation" to which the parties intended to agree:

> To save time and expense in having the matters reserved for determination resolved, the parties have agreed to submit such matters to a mutually agreeable Mediator and be bound by the determinations made by the mediator.

> The Mediator shall produce a Mediation Settlement Agreement that documents all issues and the resolution that was reached during the Mediation process. Both Parties shall sign the completed Mediation Settlement Agreement and present it to Judge Donald R. Welko Jr. in the court of Common Pleas of Allegheny County, Family Division, in the State of Pennsylvania, within 30 days of the Mediation process. [Handwritten: "Or Master Patricia Miller"] [sic].

> If the mediation efforts conclude without a total settlement resolution on all disputed items, the Mediator, Dr. Joseph Besselman, shall unilaterally write a Mediation Settlement Agreement to reflect the successful resolution of all items. During this writing, the Mediator shall unilaterally render a decision on any of the disputed items that could not be resolved by the Parties during the Mediation Process and document those decisions in the Mediation Settlement Agreement. A "disputed item" could be an Issue one or both parties have identified or chosen to ignore, or a resolution could be that an Issue identified by one or both Parties is not an Issue. Only the Mediator may legitimize an Issue after identification by one or both of the Parties or the Mediator during the Mediation Process. **If any of the Parties fails to sign the Mediation Settlement Agreement within 14 days of the Mediator signing the Mediation Settlement Agreement, that Mediation Settlement Agreement shall be legally binding on the Parties as a result of signing this Binding Mediation Agreement.** [sic]. [Both parties' initials appear directly below this paragraph.]

> If one or both Parties fail to sign the Mediation Settlement Agreement, through the signing of the Binding Mediation Agreement, both Parties have empowered the Mediator to submit the Binding Mediation Agreement and the completed Mediation Settlement Agreement to Judge Donald R. Walko Jr. for final resolution of their divorce. Both Parties agree to reimburse the Mediator for any filing fees. [Handwritten: "or Master Patricia

Miller"] [Both parties' initials appear directly below this paragraph.]

Both parties initialed and signed the BMA and their signatures were notarized. There is no dispute that the parties intended to submit their controversy to Dr. Besselman. As to the binding nature of his decision, the intent of the parties can be gleaned from the writing. The Court notes that the sentence indicating that the parties will be "legally bound" by Dr. Besselman's decision should they fail to sign the MSA is emphasized in the original and both parties initialed directly below it. The parties also initialed directly below the paragraph giving Dr. Besselman authority to submit his decision to the Court should they fail to sign the MSA. Despite the parties' improper use of the word "mediate," the text of the BMA clearly shows that both parties intended to be bound by the result of the process. The BMA explicitly states that the parties intended to submit their disputes to Dr. Besselman and be bound by his decision. Wife's argument that the parties did not intend to engage in common law arbitration is at odds with the document she signed. The Court's Order holding that the parties agreed to participate in common law arbitration and were therefore bound by the result must stand.

## The Court properly heard evidence related to the scope of the arbitration process.
*(Matter 2 Complained of on Appeal )*

Wife argues that it was improper for the Court to hold a fact-finding hearing to determine whether alimony, APL and support were properly included in the arbitration process. Wife contends that because alimony, APL, and support were not specifically mentioned in the BMA, the Court did not have the authority to determine whether they were among the issues that the parties agreed to submit to Dr. Besselman for a decision.

The Pennsylvania Rules of Appellate Procedure define requirements for appellate review of a disputed issue. Pennsylvania Rule of Appellate Procedure 302(a) states that any "[i]ssues not

7

raised in the lower court are waived and cannot be raised for the first time on appeal." At the hearing on April 13, 2014, Wife did not raise an objection to the proceeding. Wife testified first at the hearing and offered testimony as to the scope of the BMA. Tr. at 11-12. Wife's objection to the Court hearing testimony on the subject was first raised in her Concise Statement of Matters Complained of on Appeal. Wife waived the issue by failing to raise it at the hearing.

If the Superior Court chooses to consider Wife's argument on the issue despite her waiver, it should be denied on its merits.

In determining whether a dispute was within the scope of the parties' arbitration agreement, the court must first determine whether the parties entered an agreement to arbitrate and then determine whether the dispute falls within the arbitration agreement. *See Scranton Federation of Teachers v. Scranton School Dist.*, 445 A.2d 260, 262 (Cmwlth. 1982).
The issue of whether a dispute is one that is covered by the terms of the arbitration agreement is one for the court to determine. *Women's Soc. for Prevention of Cruelty to Animals, of Pa. v. American Arbitration, et al.*, 440 Pa. 34, 36 (1970). The Pennsylvania Superior Court has stated that " the scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Henning v. State Farm Mut. Auto. Ins. Co.*, 795 A.2d 994, 996 (Pa.Super. 2002) (citations and quotation marks omitted).

A contract term is ambiguous "if it is reasonably susceptible to different constructions and capable of being understood in more than one sense" as applied to a particular set of facts. *Hutchinson v. Sunbeam Coal Co.*, 513 Pa. 192, 201 (1986); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606 (1999).To determine whether a contract provision is ambiguous, a court must view the contract as a whole and not in discrete units. *Bethlehem Steel Corp. v.*

*MATX, Inc.*, 703 A.2d 39, 42 (Pa. Super. 1997) (quoting *Halpin v. LaSalle University*, 639 A.2d

37, 39 (Pa.Super. 1994), *appeal denied,* 542 Pa. 670 (1995)). Further,

> When contract language is ambiguous and the intention of the parties cannot be ascertained from the writing alone, oral testimony as to the intent of the parties and the circumstances attending the execution of the contract can be considered. As fact-finder, the trial court is the sole arbiter of the credibility and weight of the evidence.

*Beaver Dam Outdoors Club v. Hazleton City Auth.*, 944 A.2d 97, 104 (Pa. Commw. Ct. 2008)

(citations omitted).

The Court determined that the parties agreed to arbitration as discussed *supra*. As to the

scope of the agreement, the BMA did not include a list of issues to be submitted to the arbitrator.

The "statement" section of the BMA notes that the Court "reserved its authority to make a

determination with respect to the issues relating to marital property and counsel fees" and states

that the "parties have agree to submit such matters" to an arbitrator. Throughout the BMA, the

issues being presented to the arbitrator are referred to as "issues," "matters," and "items."

Paragraph 3 of the BMA provides a procedure wherein either party can raise issues to be put

before the arbitrator and empowers the arbitrator to independently raise issues for arbitration.

These terms suggest that the full scope of the agreement remained unknown at the time of the

BMA signing by design. Paragraph 6 of the BMA empowers the arbitrator to submit the MSA to

the Court in order to obtain a "final resolution of their divorce." The parties' divorce could not be

finally resolved if issues remained outstanding. In the MSA, the arbitrator rendered decisions on

many issues, including APL and alimony. At oral arguments on the issue, Wife argued that the

BMA only dealt with the issues of counsel fees and marital property while Husband argued that

the BMA covered all outstanding issues in the parties' divorce action.

The Court found that when considering the BMA as a whole, its scope was ambiguous. The document itself is unclear as to whether only marital property and counsel fees, all pending issues in the case, or only those issues which a party or the arbitrator raised were subject to arbitration. The parties' testimony on the intent of the parties and circumstances surrounding the execution of the contract were necessary for the Court to determine the scope of the BMA. The Court, therefore, held a fact-finding hearing. The Court's decision to hear evidence and testimony on the scope of the BMA was proper.

**The Court properly held that alimony, alimony _pendente lite_, and support were included in the scope of arbitration.**
_(Matter 3 Complained of on Appeal)_

Wife argues that the Court improperly held that alimony, APL, and support were within the scope of the BMA. The scope of an arbitration agreement is determined by using contract principles. To determine the scope, the Court may consider the intent of the parties and the circumstances surrounding the execution of the contract. _Henning_, 795 A.2d at 996. Further, "[u]nder Pennsylvania law, with its favorable policy towards arbitration, doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless the court can state with 'positive assurance' that the dispute was not meant to be arbitrated." _Gavlik Const. Co. v. Campbell Co._, 389 F.Supp. 551, 554 (W.D. Pa. 1975), _aff'd in part, rev'd in part on other grounds_ 526 F.2d 777 (3d Cir. 1975).

The Court determined that the parties entered a valid agreement to arbitrate and that the scope of such agreement was ambiguous, as discussed _supra_. The Court notes that Wife presented no authority to support her claim that alimony, APL and support were outside the agreement's scope. Wife testified that when she signed the BMA she believed the parties were submitting only "issues relating to marital property and counsel fees" to arbitration Tr. at 7. She

10

further testified that she believed alimony would be determined in a separate court proceeding. Tr. at 29. In response, Husband presented Exhibit C, an email from Dr. Besselman to Wife and Husband dated December 28, 2011, one (1) month before the BMA was signed.[1] Exhibit C includes an attachment listing nine (9) issues, including alimony, "for resolution." Ex. C. Wife testified that the attachment was sent for the purposes of collecting issues to be addressed by Besselman. Tr. at 88. Wife also testified that during the arbitration process she presented her case for her requested alimony amount to Dr. Besselman. Tr. at 69-74. The Court did not find Wife's claim that she did not believe the BMA subjected alimony, APL and support to arbitration to be credible.

Husband testified that he understood that the BMA put all issues pending in the parties' divorce case into arbitration. He testified that he believed that all issues raised by both parties in their Complaints in Divorce remained outstanding at the time of the BMA execution. Tr. at 110-11, 126. The Court found Husband's testimony on this point to be credible.

The Court found that the parties intended to submit all outstanding issues in their divorce case to Dr. Besselman for arbitration and resolution. Based on the writing itself, the Court cannot state with "positive assurance" that alimony was not meant to be included in the scope of the BMA as required by *Gavlik Const. Co.*, 389 F.Supp at 554. Additionally, the Court did not find Wife's testimony credible. Its conclusion that alimony, support and APL were within the scope of the BMA was proper and must stand.

**The Court did not assign Wife the burden to prove that support, alimony, and alimony *pendente lite* were not within the scope of the Binding Mediation Agreement.**
*(Matter 4 Complained of on Appeal)*

---

[1] The Court admitted Exhibit C over Wife's objection on the basis that it was offered to clarify, and not add to, the BMA. *See* PAROL-EVIDENCE RULE, Black's Law Dictionary (10th ed. 2014); *Kripp v. Kripp*, 578 Pa. 82, 90 (2004).

Wife argues that she was improperly assigned the burden to show that support, alimony and APL were outside the scope of the BMA and not to be addressed by the arbitrator. The applicable section of the Court's April 20, 2015 Order reads, "Defendant failed to show that any issues resolved in the Mediation Settlement Agreement were outside the scope of the arbitration agreed to by the parties."

The Court determined that the scope of the BMA was ambiguous and conducted a hearing to resolve the ambiguity by obtaining evidence regarding the parties' intent and circumstances surrounding the execution of the BMA, as discussed *supra*. Wife presented evidence with the purpose of showing the Court that alimony, APL and support were not within the scope of the BMA. Husband presented evidence with the purpose of showing the Court that alimony, APL and support were within the scope of the BMA. The Court did not assign the burden to either party on this issue. The Court considered the evidence presented by the parties and found that Husband presented sufficient evidence to support his position, while Wife did not present sufficient evidence to support her position. As Wife was not assigned the burden on this issue, the Court's Order should not be disturbed.

### The Court correctly found that the process the parties underwent was sufficient to constitute common law arbitration.
*(Matter 5 Complained of on Appeal)*

Wife argues that the arbitration process was so irregular that it denied her due process. She first argues that the proceedings cannot be considered common law arbitration because Dr. Besselman was not legally trained or licensed. Despite extensive argument in her brief on the subject, Wife presents no authority to justify invalidating an arbitration award because the arbitrator specifically selected by the parties was not legally trained. Wife testified at the hearing

12

that she was aware of Dr. Besselman's educational and employment background when she agreed to him serving as an arbitrator. Tr. at 6. She testified that Dr. Besselman was "the only person [she] could think of" to handle the arbitration. *Id.* Wife presented no basis for her argument.

Wife next argues that she was denied due process in the form of notice and a fair hearing. Wife argues that she was not given notice of the issues to be resolved by the arbitrator and therefore had no opportunity to present her case on those issues. Due process requires that parties participating in common law arbitration are entitled to notice and the opportunity to be heard. *See Mellon v. Travelers Ins. Co.*, 406 A.2d 759, 761-62 (Pa.Super. 1979). The Superior Court has held that parties are permitted to waive their right to a formal arbitration hearing. *Toll Naval Associates v. Chun-Fang Hsu*, 85 A.2d 526, 528 (Pa.Super. 2014).

Wife testified that she did not have notice that alimony, support and APL would be included in the MSA. However, Wife presented her arguments and demands for alimony in emails sent to Dr. Besselman sent during arbitration and submitted as Exhibits 9, 11, 12, and 14. In those emails sent during arbitration Wife argued in favor of alimony. Her contention that she did not have notice that alimony would be decided by arbitrator is in conflict with her written words.

Wife also contends that she was denied an opportunity to be heard on the issues of alimony, support and APL. In *Toll Naval Associates*, the appellant requested that a decision on a legal issue be submitted on brief without oral argument. On appeal, the appellant complained that he was denied a fair hearing on that legal issue because the parties did not orally argue. The Superior Court held that because the parties had agreed that the issue should be disposed of by submission of briefs to the arbitrator, the appellant had declined his right to a hearing and

13

therefore was not denied due process. *Toll Naval Associates*, 85 A.2d 528. Similarly here the parties agreed that their issues should be disposed of by submission of emails and phone calls to the arbitrator. The BMA signed by Wife specifically laid out the process by which Dr. Besselman would hear the parties' positions on issues. Wife did not write-in a provision in the BMA that would require a formal hearing in front of Dr. Besselman, nor did Wife refuse to sign the document. Wife testified that hundreds of emails were exchanged between her and Dr. Besselman in which she presented the facts she believed would lead him to an equitable decision on the issues. Tr. at 77-78. Wife's positions on alimony, support and APL were sent to Dr. Besselman via email. *See* Exs. 9, 11, 12, 14. Wife further testified that she raised objections with Dr. Besselman after he sent out a draft of the MSA. Tr. at 42. Wife did not allege that any of her emails were rejected or not delivered to Dr. Besselman.

Wife offers one (1) citation to support her assertion: *Mellon v. Travelers Ins. Co.*, 406 A.2d 759 (Pa.Super. 1979). In *Mellon*, the arbitrator entered awards to the appellee on claims she had not raised. Since the claims had not been raised, the appellants did not have a chance to prepare arguments against such claims. The Superior Court held that a lack of notice of the issues to be decided in arbitration violates a party's right to due process. *Id* at 761. *Mellon* is distinguishable from the instant case. Wife was given sufficient notice of the issues to be decided as is evidenced by her presentation of arguments on those issues in the exhibits submitted at the hearing. *See* Exs. 9, 11, 12, 14.

Wife conflates "the *opportunity* to be heard" with a formal arbitration hearing. When Wife signed the BMA, she knowingly agreed to arbitration via phone and email with an arbitrator located in Alabama. Her notice that the issues of APL, support and alimony would be subject to arbitration is evidenced by her presentation of arguments on those issues. Wife's

argument, therefore, cannot stand.

## The Court did not err by failing to set aside the Mediation Settlement Agreement due to fraud, irregularity, bias, mistake, and/or abuse of discretion.
*(Matter 6 Complained of on Appeal)*

Wife argues that the Court erred by not setting aside the MSA due to fraud, irregularity, bias, mistake and/or abuse of discretion in the arbitration process. Wife did not cite any authority to support her claims of fraud, irregularity, bias, mistake and/or abuse of discretion.

A common law arbitration award may be vacated when a party demonstrates that "fraud, misconduct, corruption, or other irregularity caused the rendition of an unjust, inequitable or unconscionable award."42 Pa. C.S.A. §7341. The party seeking to invalidate an arbitration award bears the burden to establish both irregularity in the arbitration process and inequity in the resulting award by "clear, precise, and indubitable evidence." *McKenna v. Sosso*, 745 A.2d 1,4 (Pa.Super 1999) (quoting *Chervenak, Keane & Co., Inc v. Hotel Rittenhouse Assocs., Inc.*, 477 A.2d 482, 485 (Pa.Super. 1984)).

Wife discussed the alleged inequity of the MSA in the context of fraud between Dr. Besselman and Husband and mistakes in the MSA. Wife testified as follows:

> Wife: One of the things I wanted addressed was [Husband] had cashed in an IRA. At that time it was $188,000. Now I think it's at $202,000. And he took that and cashed it in. And it was never put in the mediation settlement agreement. It was omitted. I wanted Joe Besselman to include it as an advance for [Husband]. And he just refused to do it. Each year of separation [Husband] dissolves stocks, and it came to over $300,000. And I wanted that put into the document noting that he had an advance. And he refused to do it. Although I had to cash in one for $18,000 to pay my lawyer fees and I was not - - that was taken off the table, and 1 had to credit [Husband] for that.
>
> Wife's Counsel: Other mistakes, what other mistakes did you identify that you brought to the arbitrator's attention?
>
> Wife: He did not use the appraisal for the house that I am living in

15

right now. The numbers are wrong. I think he raised it by about $60,000. So it looks like I get an additional 60,000 when the appraisal didn't come out like that. The appraisal was lower. Tr. at 62-63.

Wife's allegations of inequity in the award consisted of unsupported allegations and approximations. An award can be unfair to a party without reaching a level of legal inequity. Wife did not provide the Court with "clear, precise, indubitable evidence" of inequity as is required to vacate an arbitration award. *McKenna v. Sosso*, 745 A.2d at 4. Wife provided the Court evidence sufficient only to conclude that she was unhappy with the award, not that it was inequitable.

Wife alleged fraud, bias and mistake in her testimony. She cited the alleged inequity of the MSA as evidence of the alleged fraud, bias and mistake. Wife's testimony regarding mistakes in the MSA is quoted *supra*. As to bias and fraud, Wife testified that she was unaware that Husband and Dr. Besselman were discussing alimony and terms of the MSA via email. Tr. at 33-34. Wife's exhibits show that she too had email contact with Dr. Besselman that Husband was not privy to. *See* Exs. 8, 9, 12, 14. Wife failed to present any evidence that the arbitration process was conducted with unfair bias or fraud favoring Husband. Wife did not address abuse of discretion in her testimony, argument or brief. The Court's finding that the MSA should not be invalidated due to fraud, irregularity, bias, mistake and/or abuse of discretion must stand.

## Wife waived the issue of alimony *pendente lite* payments by failing to raise them at the hearing.
*(Matter 7 Complained of on Appeal)*

Wife argues that the Court erred in upholding the MSA's APL overpayment term when no Petition to Modify APL had been filed. Wife raised this issue for the first time in her Concise Statement of Matters Complained of on Appeal.

The Pennsylvania Rules of Appellate Procedure define requirements for appellate review of a disputed issue. Pennsylvania Rule of Appellate Procedure 302(a) states that any "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." At the hearing on April 13, 2014, Wife did not raise an objection or make the argument that the Court was unable to consider APL overpayment. Wife's testimony did not address the APL overpayment. Wife's objection to the Court ruling on APL overpayment was first raised in her Concise Statement of Matters Complained of on Appeal. Wife waived the issue by failing to raise it at the hearing.

## CONCLUSION

The Court carefully considered the arguments of the parties and determined that the parties' Binding Mediation and Marital Settlement Agreements could not be invalidated based upon the evidence presented. This Court's April 20, 2015 Order of Court, therefore, should be affirmed.

BY THE COURT:

_____, J.

Donald R. Walko, Jr., Judge

17

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

THOMAS R. MILLER,

                Plaintiff,

    v.

COLLEEN H. MILLER,

                Defendant.

No.:    FD 09-002320-016

**ORDER OF COURT**

BY:

**Honorable Donald R. Walko, Jr.**
City-County Building
414 Grant Street, Room 706
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:
Brian C. Vertz, Esquire
Brittany Yurchyk, Esquire
POLLOCK BEGG KOMAR GLASSER
& VERTZ, LLC
437 Grant Street, Suite 501
Pittsburgh, Pennsylvania 15219

Counsel for Defendant:
Brad R. Korinski, Esquire
Margie Hammer, Esquire
LIEBER, HAMMER, HUBER &
BENNINGTON
5528 Walnut Street, 2nd Floor
Pittsburgh, Pennsylvania 15232

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

THOMAS R. MILLER,

           Plaintiff,

    v.

COLLEEN H. MILLER,

           Defendant.

No.: FD 09-002320-016

## ORDER OF COURT

AND NOW, this _20th_ day of _April_____, 2015, following oral argument on the issues of whether Wife was induced to sign the parties' Binding Mediation Agreement by fraud and whether the arbitration process was so irregular as to render the Mediation Settlement Agreement unenforceable, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Defendant Colleen Miller failed to meet her burden of showing fraud prior to the signing of the Binding Mediation Agreement.

2. The Binding Mediation agreement is enforceable.

3. Defendant failed to meet her burden of showing fraud, misconduct, corruption or other such irregularity in the arbitration process which caused the arbitrator to render such an unjust, inequitable and unconscionable award so as to make the award unenforceable.

4. Defendant failed to show that any issues resolved in the Mediation Settlement

Agreement were outside the scope of the arbitration agreed to by the parties.

5. The Mediation Settlement Agreement is enforceable.


BY THE COURT:

_____, J.